HERBERT S. MICHAEL and All Other Preferred Stockholders of CAYEY-CAGUAS TOBACCO COMPANY, a Domestic Corporation in Dissolution, Similarly Situated, and Who Desire to Come in and Share in the Expense of this Action, Plaintiff, v. CAYEY-CAGUAS TOBACCO COMPANY, Defendant.

First Department, February 6, 1920.

Corporations — dissolution — assets remaining after payment of debts insufficient to pay both preferred and common stock at par — right of preferred stockholders after payment of preferred stock to receive unearned and undeclared cumulative dividends — cumulative preferred dividends payable from profits only.

On the dissolution of a domestic corporation, whose assets, remaining after the payment of its debts, are not sufficient to pay both the preferred and common stock at par, the preferred stockholders are not entitled, in addition to the payment of their stock at par, to receive dividends on said stock, to the exclusion of the common stockholders, where no dividends were declared and none could have been legally declared thereon

under section 28 of the Stock Corporation Law as no profits were earned, and where the certificate of incorporation provided that the holders of the preferred stock should receive, " when and as declared," from the surplus or net profits, a fixed yearly cumulative dividend of a stated per centum and that on dissolution the preferred stockholders should be paid the par value of their stock and all accrued and unpaid dividends and after such payment the remainder of the surplus assets should belong to the holders of the common stock.

Cumulative preferred dividends cannot be paid from the capital of the corporation but from the accrued profits only.

SUBMISSION of a controversy ·upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*Frederick P. Randolph* of counsel [*Stallo Vinton* with him on the brief], for the plaintiff.

*T. Ludlow Chrystie* of counsel [*Francis K. Raynor* with him on the brief], for the defendant.

*Arthur Carter Hume,* as *amicus curiæ* for common stockholders.

CLARKE, P. J.:

This is a controversy between preferred stockholders and the company as to whether the preferred stockholders were entitled upon dissolution, after they had received the par value of their stock, to a further sum to the exclusion of the common stockholders. Upon the submission counsel for certain common stockholders appeared as *amicus curiæ* and submitted a brief. The court suggested that it would be desirable that the common stockholders be represented and thereafter the holders of 3,642 shares out of 4,800 shares of the common stock issued and outstanding, being in excess of three-fourths thereof, joined in the submission upon written stipulation.

The defendant, a domestic corporation organized in December, 1903, under the Business Corporations Law of the State of New York, was duly dissolved in June, 1918, in pursuance of the provisions of section 221 of the General Corporation Law. Its board of directors duly proceeded to adjust and wind up its business and affairs, has duly sold its assets and applied the same in discharge of its debts and obligations, and, after paying and adequately providing for the payment of such debts and obligations, has distributed among the

preferred stockholders the sum of $190,225, being the amount of the entire capital of the preferred stock of 7,609 shares of the par value of $25 each. The amount of fully paid common stock issued and outstanding is $120,000. The balance of the assets is less than the amount of the capital of the common stock. The last dividend paid or declared on the common stock was that paid on October 1, 1911. The last dividend paid or declared on. the preferred stock was that paid on August 31, 1912, for the quarter ending August 22, 1912. Plaintiff claims that the balance of the assets should not be distributed among the common stockholders, and that the preferred stockholders are entitled to a distribution from the balance of the assets of a sum equal to eight per centum per annum of the par value of the preferred stock from the said 22d day of August, 1912, to date, payable, however, only out of said balance of assets.

The corporation was organized in December, 1903, and thereupon commenced business with an authorized capital stock of $30,000, common stock. In May, 1905, the authorized capital stock was duly increased from $30,000 to $60,000.

In April, 1906, the authorized capital stock. was further duly increased from $60,000 to $120,000. Said increased stock of $60,000 was duly made voting preferred stock. The certificate of incorporation of defendant, duly amended in May, 1906, provided for said voting preferred stock as follows:

" *Resolved,* That the increased capital stock of Sixty thousand ($60,000) dollars duly authorized at a Special Meeting of the Stockholders, held on the 19th day of April, 1906, be classified as preferred stock to be entitled to preference and priority over the common stock as follows: The holders of preferred stock shall be entitled to receive, when and as declared, from the surplus or net profits of the company, a fixed yearly cumulative dividend of, but not exceeding eight per centum per annum, to be calculated from the date of issue, payable annually or oftener, as the Board of Directors may determine. All such dividends shall be paid or amply provided for before any dividends shall be paid on, or set apart for the shares of common stock. All net earnings or profits in excess of said dividend of eight per centum per annum may be distributed by the

directors to the holders of shares of common stock. The preferred stock, or any part thereof, is subject to redemption, in the discretion of the Board of Directors, at par and accrued and unpaid dividends, at any time after five years from the issue thereof. In case of liquidation or dissolution of the company prior to redemption of the preferred stock, the surplus assets and funds of the company shall be applied, first, to the payment in full par value of said preferred shares, and all accrued and unpaid dividends thereon; and after such payments, the remainder of the surplus assets and funds of the company shall belong to, and be divided *pro rata* among the holders of the shares of common stock. * * * "

On February 13, 1907, the authorized capital stock of the defendant was further duly increased from $120,000 to $240,000. Said increased capital stock of $120,000 was duly made non-voting preferred stock. The certificate of incorporation of the defendant, duly amended in May, 1907, provided for said non-voting preferred stock as follows:

" *Resolved*, That the increased capital stock of One hundred and twenty thousand ($120,000) dollars, duly authorized at a Special Meeting of the Stockholders, held on the 6th day of February, 1907, be classified as preferred stock to be entitled to preference and priority over the common stock as follows: * * *

" This non-voting preferred stock is upon the same basis as the other preferred stock of Cayey-Caguas Tobacco Company, with the exception of the voting power and of the hereinafter mentioned redemption clause. * * * The non-voting preferred stock, or any part thereof, is subject to redemption, in the discretion of the Board of Directors at ten (10) per cent. above par and accrued and unpaid dividends, at any time after January 1, 1918. In case of liquidation or dissolution of the company prior to redemption of the preferred stock and the non-voting preferred stock, the surplus assets and funds of the company shall be applied to the payment in full par value of said preferred stock, and non-voting preferred stock, and all accrued and unpaid dividends thereon; and after such payment, the remainder of the surplus assets and funds of the company shall belong to and be divided *pro rata* among the holders of common stock."

In January, 1912, the authorized capital stock of the company was further increased from $240,000 to $360,000. Of said increased capital stock of $120,000, $60,000 was common stock. The remaining $60,000 was duly made voting preferred stock. The certificate of incorporation of the defendant, duly amended in January, 1912, provided for said voting preferred stock as follows:

" The holders of this preferred stock and of the heretofore issued preferred and non-voting preferred stock shall be entitled to receive, when and as declared, from the surplus or net profits of the corporation, a fixed yearly cumulative dividend of, but not exceeding eight (8) per centum per annum, to be calculated from the date of the original issue, payable annually or oftener, as the Board of Directors may determine. All such dividends shall be paid or amply provided for before any dividends shall be paid on, or set apart for the shares of common stock. All net earnings or profits in excess of said dividend of eight (8) per centum per annum may be distributed by the directors to the holders of shares of common stock. This preferred stock, or any part thereof, is subject to redemption, in the discretion of the Board of Directors, at five (5) per centum above par and accrued and unpaid dividends, at any time after January 1, 1918. In case of liquidation or dissolution of the corporation prior to the redemption of this preferred stock or of the heretofore issued preferred and non-voting preferred stock, the surplus assets and funds of the corporation shall be applied to the payment in full par value of this preferred stock and the heretofore issued preferred and non-voting preferred stock, and all accrued and unpaid dividends thereon; and after such payment, the remainder of the surplus assets and funds of the corporation shall belong to, and be divided *pro rata* among the holders of common stock."

The certificates of preferred stock set forth on their face said provisions of the amended certificates of incorporation of defendant as to dividends, redemption and payment in case of dissolution, as they respectively appear in the certificates herein set forth under which said stock was respectively issued.

The by-laws of defendant have no provisions relative to stock preferences.

All dividends have been paid on the preferred stock up to and including August 22, 1912. The last dividend paid on the preferred stock, which was the dividend paid on August 31, 1912, for the quarter ending August 22, 1912, was declared on July 30, 1912, and from said date there has been no time when there were surplus or net profits of the corporation, and the defendant from said date has not had assets in excess of the amount of its debts and the amount of its issued and outstanding stock.

Plaintiff claims that upon the foregoing facts the preferred stockholders are entitled to a distribution from the balance of the assets of a sum equal to eight per centum of the par value of the preferred stock from the said 22d day of August, 1912, to date, payable, however, only out of said balance of assets.

This claim is denied by defendant, which claims that it is under the obligation to distribute said balance of assets among the common stockholders of defendant as a payment on account of the capital of the common stock without any other or further payment to the preferred stockholders.

It is, of course, competent for shareholders to contract between themselves and the company as to what their respective rights shall be. This contract is evidenced by the articles of association or certificate of incorporation and usually appears upon the face of the certificate of stock. It is not questioned that the various classes of stockholders of the defendant company, consisting of common, preferred voting and preferred non-voting stockholders, have so contracted. The question to be answered is the interpretation of that contract. This much is clear. While the company existed as a going concern the preferred stockholders were entitled out of the earnings or profits to preferred dividends of eight per centum " when and as declared." It is also clear that upon liquidation or dissolution the preferred stockholders were entitled to be paid in full the par value of their stock before the common stockholders could receive anything. The company is in liquidation. It has paid all its debts and obligations. From its assets and funds remaining after such payment of debts it has paid to the preferred stockholders the full face value of their stock. No dividends

have been declared since August 22, 1912. From said date there has been no time when there were surplus or net profits and the defendant from said date has not had assets in excess of the amount of its debts and the amount of its issue of outstanding stock. So that not only have no dividends been declared but none could have been legally declared or paid.

Section 28 of the Stock Corporation Law provides: " The directors of a stock corporation shall not make dividends, except from the surplus profits arising from the business of such corporation, nor divide, withdraw or in any way pay to the stockholders or any of them, any part of the capital of such corporation." Since no profits have been made and so no dividends were or could have been declared it is difficult to understand how eight per centum annual dividends could have accumulated during these intervening years to be now paid out of " surplus assets and funds " or " surplus profits," to wit, the amount remaining after payment of debts and repayment of capital. No such sum exists. The amount now on hand is not profits, but is capital.

In *Roberts* v. *Roberts-Wicks Co.* (184 N. Y. 257) the capital of the defendant company had been impaired which necessitated a reduction to $200,000 which had been effected. There was left the sum of $9,138.15 which was in excess or surplus of capital. The question involved was whether the preferential right of the preferred stockholders attached to this sum in the payment of cumulative dividends.

By the charter and the certificates issued to the preferred stockholders, they were to be paid " out of the surplus profits arising from the business of the corporation * * * a dividend equal to six per cent per annum on the preferred stock, payable in equal semi-annual payments, before any dividend shall be paid on the common stock; such dividend on the preferred stock shall be cumulative and in case of non-payment shall bear interest at the rate of six per cent per annum from the date when payable." The court said: " This was a valid contract between the company and the preferred stockholders, which was binding upon all other stockholders. (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159, 180.) Each class of stock was a part of the whole capital stock

and both classes were made by the charter alike, in all respects, except in the one respect that the preferred stock was entitled to have ' the surplus profits arising from the business ' appropriated, in first order, to the payment of six per cent dividends, cumulatively. Now this was as much an agreement of the common stockholders, as it was the agreement of the corporation and the right of the preferred stockholder was inviolable. It assured to him, in effect, that if the corporate earnings failed to show surplus profits sufficient to pay a dividend due on the preferred stock, to the extent of the default in payment and of the accruing interest thereon, there would be a specific charge upon all subsequent surplus profits gained by the company. In other words, the dividends agreed to be paid upon such shares of stock were a charge upon the profits of the company for all time and all arrears of such dividends, with accrued interest, were to be paid out of any moneys applicable to such payment before any payment should be made to the common stockholders. * * * For the purpose of such a dividend, however, only such surplus as represented the profits of the business could, legally, be availed of, and this brings us to consider the question of the disposition of the surplus of capital, left upon the reduction of the capital stock, which the appellant claims to be equivalent to surplus profits and, hence, to be applicable upon the company's debt to the preferred stockholders for arrears of dividends. * * * The preferential right of the preferred stockholders did not reach to a distribution of that which was capital, nor create any charge upon capital. That which constitutes the capital stock of a corporation belongs to all of its stockholders, proportionately to their holdings. It is divided into shares and each share represents the holder's proportionate interest. * * * Upon dissolution or in liquidation, it entitles him to share ratably in the assets. * * * But, assuming that the directors in their discretionary management of the company's affairs, concluded, and were empowered, to distribute this surplus of capital, the preferred stockholders would have no legal, or equitable, claim upon it in satisfaction of past due and unpaid dividends. That was not the contract.

Their only right would be to share in such a distribution ratably with the common stockholders. (*Strong* v. *Brooklyn C. T. R. R. Co.*, 93 N. Y. at p. 435.) The charter and the contract made them alike in all respects except as to dividends. Dividends, as the rule, are not payable out of the capital of a corporation; but only from the surplus profits arising from the business carried on and that was the contract here. * * * In the present case it must be borne in mind that the $9,138.15 remained in the corporate accounts, after the reduction of capital stock, as a portion of the former capital and it was, in no sense, like an excess of property, which had been accumulated in the conduct of the business beyond the fixed capital. It did not represent ' surplus profits arising from the business; ' it was not within the intendment of the agreement with respect to dividends on the preferred stock and its distribution, when made, could only be legally effected by dividing it among all the stockholders ratably and without preference. (See *Seeley* v. *N. Y. Exchange Bank*, 8 Daly, 400; affd. on opinion below, 78 N. Y. 608, and Cook on the Law of Stock, etc., § 278.) "

This case established, it seems to me, that the rule is the same as to cumulative preferred dividends as to ordinary dividends — they are to be paid from profits and cannot be paid from capital.

As to what, in case of liquidation, are to be considered as surplus assets out of which cumulative preferred dividends may be paid, *Matter of New Transvaal Company* (L. R. [1896], 2 Ch. 750) is an interesting case.

The articles of association provided as follows:

" 86. The profits of the company in each year shall * * * be applicable first in or towards payment of a dividend of 8 per cent. on the amount of the ordinary shares, and the surplus (if any) shall * * * be divided as follows, viz, one-fifth part thereof among the holders of founders' shares, and the remaining four-fifths thereof among the holders of ordinary shares in proportion to the amounts for the time being paid up thereon."

" 114. If the company shall be wound up one-fifth of the surplus assets (if any) shall belong to and be divided among the holders of founders' shares, and the remaining four-fifths

of such surplus assets shall belong to and be divided among the holders of ordinary shares in proportion to the amount of capital paid up on the shares held by them."

The company went into voluntary liquidation. All admitted debts and liabilities had been paid and satisfied. The question submitted was "whether on the true construction of art. 114 the assets of the company, after discharging its debts and liabilities and the costs of winding up, were divisible as between the holders of founders' shares and ordinary shares on the basis of the founders' shares receiving one-fifth of the said assets and the ordinary shares the remaining four-fifths thereof, or whether the expression ' surplus assets ' meant the assets remaining after making good the paid-up capital of the company as well as discharging the debts, liabilities and costs, and accordingly the assets were divisible between the holders of founders' shares and ordinary shares ratably according to the amounts paid up on all such shares respectively."

VAUGHAN WILLIAMS, J., said: " Now, so far as profits are concerned, that is dealt with in art. 86. In construing art. 114, I think that art. 86 must be taken into consideration, because it is from that article that the proportion of one-fifth and four-fifths was taken. In art. 86 that proportion was applied to profits, and it seems to me that the presence of that same proportion in art. 114 shows that 'it is probable that art. 114 was intended to deal with a surplus analogous to the division of profits in the lifetime of the company. If that view is correct, ' surplus assets ' must be read as meaning, not surplus after the mere payment of debts — because the presence of a surplus after payment of the debts is quite consistent with the loss by the company of capital — but surplus not only after payment of debts but recoupment of the capital paid. That is one reason which induced me to think that ' surplus assets ' was used in that sense in art. 114. Moreover, I cannot help feeling that to hold that ' surplus assets ' meant in this case surplus after the mere payment of debts and outside liabilities would lead to a result so unfair and inequitable that one ought not to arrive · at that conclusion unless one is driven to it by the strong words of the article itself. The result of such a construction might be,

that although the company had been worked at a loss, and those who had paid up their shares had been large cash losers, yet the holders of the small number of founders' shares might, by taking one-fifth of the surplus remaining after payment of debts, make a very large profit. * * * I cannot refuse to arrive at the conclusion that the term ' surplus assets ' means surplus profits — that is to. say, surplus assets after payment of debts and recoupment of capital."

*Matter of W. J. Hall & Co., Limited* (L. R. [1909] 1 Ch. 521), presents the question here at issue.

Clause 5 of the memorandum of association stated the capital as follows:

" The capital of the company is 10,000*l*, divided into 500 preference shares of 10*l* each and 500 ordinary shares of 10*l* each, and such preference shares shall confer the right to a fixed cumulative preferential dividend at the rate of five per cent. per annum on the capital paid up thereon, and shall rank both as regards dividends and capital, in priority to the ordinary shares: * * * "

Of this capital 315 preference shares of the nominal value of £3,150 and 256 ordinary shares of the nominal value of £2,560 were issued and paid up.

Under article 5 it was provided as follows: " (a) Preference shares shall be entitled to be paid out of the net profits of the company cumulative preferential dividends at the rate of five per cent. per annum, and shall have priority over all the other share capital for the time being of the company, both as to capital and dividend.

" (b) Of the surplus net profits of the company in each year which may remain after payment of the dividends provided for by the foregoing sub-clause, such a sum (if any) as the directors may see fit shall be carried to a reserve fund, pursuant to article 109 hereof, and the remainder shall belong to and be distributed amongst the holders of ordinary shares."

" (d) In the event of the company being wound up, or of its capital, assets, or any part thereof becoming from any cause distributable among the members of the company, the surplus divisible assets for the time being remaining after paying the liabilities of the company shall be applied, first, in repaying the capital paid up on the said 500 preference shares or so

many thereof as may be issued for the time being, and, secondly, in paying the arrears (if any) of the five per cent. preferential dividends thereon to the commencement of the winding-up or the date of such distribution, as the case may be. The remainder of such surplus assets, after making the payment aforesaid to the holders of the preference shares, shall belong to the holders of the ordinary shares in proportion to the amounts paid up on the shares held by them respectively."

No dividends were ever declared on either class of shares, but the profits were accumulated, and on March 28, 1918, the date of the last balance sheet, amounted to £605.

The company was wound up voluntarily and a liquidator appointed. After payment of debts the liquidator had £4,767 in hand for the preference and ordinary shareholders, subject to costs. The preference capital would absorb £3,150, leaving a balance of £1,617.

The question was whether the preference shareholders could claim this balance to the extent of £1,457, being the arrears of their preferential dividends calculated at five per cent interest on their capital to the commencement of the winding up, or only to the extent of £605 accumulated profits, or whether the whole balance belonged to the ordinary shareholders.

SWINEEN EADY, J., said: " The preference shareholders did not receive their 5 per cent. dividends while the company was a going concern. In fact no dividend was ever declared.

" In these circumstances the question is what are the respective rights of the preference and ordinary shareholders? Those rights depend on the true construction of the memorandum and articles of association. The provision in article 108 that ' no dividend shall be payable except out of the profits of the company ' is merely a statement of the ordinary law. The preference shareholders contend that they are entitled to a sum equivalent to a 5 per cent. interest on their preference capital from the time it was paid up, and that that sum ought to be paid immediately after their preference capital."

After quoting article 5 (d), *supra*, the court said: " Now it is to be observed that it is ' arrears of dividends '

that are to be paid, and by article 108 dividends are only payable out of net profits. There is nothing in the articles to give the preference shareholders any claim to interest on their capital in case there are no profits. In these circumstances I determine that the preference shareholders cannot sustain their claim to 5 per cent. interest on their capital in priority to the ordinary shareholders' right to return of their capital. I prefer to call it a claim to interest rather than dividend, as dividend is only payable out of profits." He also held that so far as the £605 of accumulated profits were concerned the preferred shareholders were entitled to have it applied to their claims for cumulative dividends.

"The surplus assets must therefore be applied, first, in repaying the 3,150*l* preference capital, and, secondly, in paying arrears of preferential dividend to the extent of 605*l* profits available. The surplus will go to the ordinary shareholders."

Another English case upon the subject is *Matter of Espuela Land & Cattle Company* (L. R. [1909] 2 Ch. 187). The articles of association provided for 40,000 preferential shares and 60,000 common. Preferential shares were ten per centum cumulative payable out of the divisible profits of the company in each year, provided also that in case the company shall at any time be wound up the said preference shares shall be entitled to be paid out of the property and assets of the company the full amount of capital paid up thereon in preference and priority to and before any payment shall be made thereout in respect to the ordinary shares. The memorandum of association also contained this provision in regard to the preference shares: "Carrying a cumulative preferential dividend of 10*l* per cent. per annum on the amount for the time being paid up thereon, and having also a preferential right to be repaid the amount paid up thereon and interest out of the assets of the company if the company shall be wound up."

There were issued 26,905 preferential shares and 28,222 ordinary shares, all fully paid. The company was incorporated in 1884 and the only dividend paid was one of three per cent on the preferential shares in 1905. In December, 1906, the company agreed to sell all its assets for £576,947, and the purchase was completed in March, 1908. In

September, 1908, the company went into voluntary liquidation. All the debts and debentures and other liabilities of the company were paid out of the purchase money and there remained a surplus more than sufficient to repay the capital of all the preference and ordinary shares.

The preference shareholders claimed that they were entitled to their capital and a cumulative preferential dividend from the date of the payment for their shares which would take the whole surplus. The ordinary shareholders claimed that the preference shareholders had no rights in the assets of the company beyond repayment of their capital with such interest as they were entitled to.

The court, SWINFEN EADY, J., said: "The preference shareholders have therefore a preferential right to be repaid the amount paid up on their shares 'and interest' if the company shall be wound up. That event has happened. Article 3 of the articles of association also provides for repayment of capital in a winding-up but omits any reference to interest. Under clause 5 of the memorandum, however, the preference shareholders are in my judgment entitled to interest on their capital at five per cent. from the commencement of the winding-up until payment.

"With regard to the claim of the preference shareholders to arrears of 10 per cent. dividends I must refer to articles 3, 87 and 88 of the articles of association. * * * It will thus be seen that the preference shareholders are only entitled to dividends out of the divisible profits in each year arising from the business of the company. There were not any such profits, beyond the amount available for the one payment of dividend above mentioned, and at the date of the winding-up there was a debit balance on revenue account of 26,000*l.* I therefore determine that the preference shareholders are not entitled to be paid their arrears of dividends out of the proceeds of the realization of the company's capital assets. There remains the question how the assets which remain after paying preference capital, interest thereon, and ordinary capital are to be distributed. * * * I therefore determine that the surplus assets must be distributed rateably between the preferred and ordinary shares according to the nominal amount of their shares."

I am satisfied with the reasoning of the foregoing cases and think they are applicable to that at bar. There being no accumulated profits, when the preferred stockholders received the full par value of their stock they had received all that they were entitled to, in view of the fact that the amount remaining in the hands of the company was not sufficient to pay the par value of the common stock. In other words, there was no surplus, the amount on hand not being sufficient to pay the debts and repay the capital.

It follows that judgment should be for the defendant, with costs.

DOWLING, SMITH, PAGE and PHILBIN, JJ., concurred.

Judgment ordered for defendant, with costs. Settle order on notice.