# Richmond.

## JOHNSON, ADMINISTRATOR, V. JOHNSON & BRIGGS, INC.

March 20, 1924.

Absent, Burks, J.

1. STOCK AND STOCKHOLDERS—*Rights of Preferred Stockholder on Dissolution.—Dependent on Contract.*—Here the question to be determined was whether the holder of preferred stock of a corporation was entitled to dividends up to the dissolution of the corporation, though such dividends were not earned, in preference to any distribution of the assets to the holders of the common stock, all the debts of the corporation having been paid, the determination rests on the proper construction of the contract between the various classes of stockholders, which is generally evidenced by the charter, and in this State is doubtless required to be therein expressed.

2. STOCK AND STOCKHOLDERS—*Dissolution—Distribution Held to be on Dissolution and not Redemption of Stock.*—In the instant case, at the same meeting of a corporation at which a resolution to redeem preferred stock was adopted, there was also a resolution to dissolve the corporation, and by consent of all the stockholders the corporation was formally dissolved long before it could legally redeem the stock.

   *Held:* That the settlement for the preferred stock was to be taken, under the circumstances, as done in the course of distribution of the assets upon dissolution and not in the exercise of the right of the corporation to redeem it.

3. STOCK AND STOCKHOLDERS—*Preferred Stockholders—Dissolution of Corporation—Accumulation of Dividends—Case at Bar.*—In *Drewry-Hughes Co.* v. *Throckmorton*, 120 Va. 859, 92 S. E. 818, it was held that a preferred stockholder was entitled to be paid his accrued dividends out of the assets of the company in liquidation, although such dividends had not been earned, before any payments could be made to the common stockholders; and in the instant case although the language in the two charters differed, a careful analysis failed to disclose any difference of meaning, therefore the Supreme Court of Appeals being unable to distinguish the two cases, and believing the conclusion in the *Drewry-Hughes Case* sound, held that the preferred stockholder in the instant case was entitled to dividends up

to the date of dissolution in preference .to any distribution of the assets to the holders of the common stock.

4.   STOCK AND STOCKHOLDERS—*Preferred Stockholders—Dissolution of Corporation—Accumulation of Dividends—Case at Bar.*—In the instant case the preferred stockholder under the charter of the corporation was assured, first, of dividends from the profits of the corporation, if any, in preference to any dividend on the common stock; and secondly, he was assured on dissolution and distribution of the assets, if the profits had proved insufficient to produce the preferred dividends, that then he should receive the preferred dividends upon distribution of the capital assets in preference to any distribution of such assets to the common stockholders. If such returns were only payable out of net earnings, they are assured by the first provision, and the second provision unless it secured the payment of the preferred dividends from the assets of the corporation, would be unnecessary.

5.   DIVIDENDS—*Preferred Stockholders—Cumulative Dividends—Earnings.*— The rule that capital cannot be impaired by the declaration of dividends out of the capital assets of a corporation, has no application to the case of cumulative dividends on preferred stock when the corporation is dissolved and the assets are being finally distributed.

6.   STOCK AND STOCKHOLDERS—*Preferred Stockholders—Cumulative Dividends.*—The word "cumulative," as used in contracts between preferred stockholders and the corporation, refers to dividends which accumulate only because they have not been earned, or if earned, which have neither been declared nor paid. Cumulative dividends generally signify returns which gather volume by addition—delayed payments on account of anticipated dividends, which, although not presently earned, confer upon the stockholder the contractual right to require payment thereof in full out of future earnings before there can be any dividend on the common stock. Cumulative dividends in a going concern can, of course, only be declared from the earnings, but this rule has no application where a company dissolves, pays its debts, and then proposes to distribute its assets.

7.   CONTRACTS—*Intrepretation and Construction—Effect Given to all Language used.*—It is fundamental that in construing every contract all of the language which is used should be considered, and that no language should be construed to be inoperative unless the context makes such a construction inevitable.

8.   STOCK AND STOCKHOLDERS—*Preferred Stockholders Take no Risk.*—The common understanding of a preferred stock contract is that the preferred stockholders take no risk either as to the return of par value of their stock, or as to the limited dividends which they are conditionally promised thereon, if the assets for distribution are sufficient

to reimburse them, and for this promise the preferred stockholders
waive all expectation or possibility of any additional profit, however
great the ultimate profits may be.

Error to a judgment of the Law and Equity Court of
the city of Richmond, in an arbitration proceeding
under chapter 143 of the Code of 1904, sections
3006-3010. Judgment for defendant. Plaintiff as-
signs error.

*Reversed.*

The opinion states the case.

*Harrison & Long* and *Caskie & Caskie*, for the plain-
tiff in error.

*Scott & Buchannan*, for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

This case arises under procedure like that pursued in
the case of *Drewry-Hughes Co.* v. *Throckmorton*, 120 Va.
859, 92 S. E. 818. The controversy was submitted to
the arbitrament of the Honorable Beverley T. Crump,
who is judge of the law and equity court of the city of
Richmond, pursuant to Code 1919, chapter 257, sec-
tions 6159-6163, inclusive, with an agreement that the
award and judgment should "be appealable" to this
court upon proper proceedings taken for the purpose.

[1] The question to be determined is whether the
petitioner, as the holder of $50,000.00 of the preferred
stock of the defendant corporation (all of its debts hav-
ing been paid), is entitled to dividends up to the date of
the dissolution of the corporation, though such divi-
dends were not earned, in preference to any distribution
of the assets to the holders of the common stock. It

appears to be universally agreed that the determination of such questions rests in the proper construction of the contract between the various classes of stockholders, which is generally evidenced by the charter, and in this State is doubtless required to be therein expressed.

[2] It is contended for the company that inasmuch as it had the right to redeem the stock and the proper resolution therefor had been adopted, the case is to be determined as if upon an offer by the company to exercise its right of redemption.

We think it unnecessary to consider whether or not the proper relief would have been identical or different, because in this case, at the same meeting at which the resolution to redeem was adopted, there was also a resolution to dissolve the corporation, and by consent of all of the stockholders it was formally dissolved long before it could legally redeem the stock. So that we agree with the learned arbitrator that the settlement for the preferred stock is to be taken, under the circumstances here, as done in the course of distribution of the assets upon dissolution and not in the exercise of the right of the corporation to redeem it.

[3] So considering the question, the plaintiff in error, through his attorney, contends that the case is in substance like the case of *Drewry-Hughes Co.* v. *Throckmorton, supra,* and that the same relief should be afforded.

In that case it was held that the preferred stockholder was entitled to be paid the accrued dividend out of the assets of the company in liquidation, although such dividend had not been earned, before any payments could be made to the common stockholders.

Let us then consider and compare the provisions of that charter with those contained in the charter of Johnson & Briggs, Inc.

The pertinent provisions of these charters and stock certificates are printed in parallel columns in the margin.*

The arbitrator concluded that the differences in these provisions were such as to lead to a different result, and held that the plaintiff in error here, as a preferred stockholder, was not entitled to any further dividends upon his preferred stock, it being sufficiently

*CHARTER.

| *Drewry-Hughes Co.* | *Johnson & Briggs, Inc.* |
|---|---|
| "The preferred stock is to be entitled to six per cent (or sixty dollars per share) per annum and no more, out of the net earnings of the company every year, to be paid semi-annually, or otherwise, as the directors may determine, and' its claim to that dividend, if not earned in any one year, is to be cumulative, and to constitute a preferred charge over the common stock, on the income of succeeding years, until the same is discharged; and the preferred stock is likewise to have a prior claim, in the event of liquidation or·dissolution, to the amount of its face value and any arrears of dividends due and unpaid to it, upon the assets of the company, over and above the common stock." | "The preferred stock may be issued as and when the board of directors may determine, and shall entitle the holder thereof to receive out of the surplus or net earnings of the corporation, and the corporation shall be bound to pay thereon, as and when declared by the board of directors, a dividend at the rate of, but not exceeding, six per centum (6%) per annum, accumulative from and after such time as may be provided by the board of directors at the time of issuance thereof, payable yearly, half-yearly or quarterly, as may be prescribed by the board of directors, before any dividend shall be set apart or paid on the common stock; provided, however, that when a dividend is paid on preferred stock, and all prior dividends thereon have been paid, the board of directors, if in their judgment the surplus or net profits, after deducting the amount of dividends to accrue on the preferred stock during the current year, shall be sufficient for such purpose, shall have power then or thereafter to declare and pay a dividend on the common stock. "In case of liquidation or dissolution or distribution of the assets |

shown that there were no net profits out of which they could be paid. The award denies the right to such dividends, and after the payment of the face value of the preferred stock adjudges that the residue of the assets belongs to the holders of the common stock, discharged from any claim from dividends on the preferred stock.

It seems to us that the contention of the plaintiff in error is well supported by the language used in the charter. Although this language in the two charters differs, a careful analysis fails to disclose any difference of meaning. In the *Drewry-Hughes Case*, the preferred stock was entitled to six per cent per annum, and no more, "out of the net earnings," while here the pre-

of the corporation, the holders of the preferred stock shall be paid the par amount of their preferred shares, and the amount of dividends accumulated and unpaid thereon before any amounts shall be payable to the holders of common stock; the balance of the assets and funds shall be distributed ratably among the holders of common stock without preference."

CERTIFICATES.

"In the *Drewry-Hughes Case* the provisions printed on the certificate were identical with the charter provisions (*supra*) except that the following is added at the end: "* * but in no case is the preferred stock to be entitled to receive more than its regular six per cent yearly dividends and any arrearages, with interest, that may be due to it on that amount, and to the amount of its face value in the event of liquidation or dissolution."

"The holders of preferred stock of this company are entitled to receive in preference to any dividend on the common capital stock, accumulative dividends at the rate of six (6%) per centum per annum, out of the net earnings of the company, and on any distribution of the assets of the company to the payment of its par value, and the amount of any accumulated dividends then unpaid, but to no other dividend or payment."

ferred stock was entitled to six per cent per annum "out of the surplus or net earnings." In the former case the dividends, if not earned in any year, were to be "cumulative and to constitute a preferred charge on the income of succeeding years," while in this case the dividends were to be "accumulative" and no dividend could be paid on the common stock until the preferred dividend "and all prior dividends" on the preferred stock had been paid. It should be observed that these provisions refer to the corporation in operation but not to the corporation in liquidation. Comparing the two provisions of the corporations in operation, we find that in each instance the dividend is to be paid out of the net earnings; that it is to be paid in the one case "semi-annually or otherwise" and in the other "yearly, half-yearly, or quarterly;" that in the one case it is to be cumulative and in the other case accumulative; that in the one case it is to constitute a preferred charge over the common stock on the income of succeeding years until discharged, and in the other it is to be paid as prescribed by the board of directors before any dividend can be set apart or paid on the common stock.

We discover no difference whatever in the import or legal effect of these various provisions as applicable to the company in operation.

In both charters, however, dissolution, liquidation and distribution of the assets were contemplated, and in each the charter expresses the contract of the parties in case of such distribution of the assets between the preferred and common stockholders. In the Drewry-Hughes charter it was provided that upon such liquidation the preferred stock was "likewise to have a prior claim" for arrears of dividends, while in this case the preferred stockholders are to be paid the amount of dividends accumulated "before any amounts shall be

payable to the holders of the common stock," and surely this is a distinction without a difference. In the *Drewry-Hughes Case* the holders of the preferred stock had a claim upon the assets of the company over and above the common stock, while in this case the word "assets" is twice used and with the same significance in connection with the balance of the fund which should be distributed to the common stockholders after the amount of the preferred shares and the dividends accumulated and unpaid thereon had been first liquidated in the distribution of such assets.

Analyzing this language with the utmost care, we find it impossible to distinguish the case from the *Drewry-Hughes Case*, and unless we are prepared to overrule that decision the same relief should be granted here as was granted there. We believe the conclusion in that case was sound, and hence have no disposition to overrule it.

[4] The language of each of these charters holds out the promise of anticipated preferential return upon the shares of the preferred stockholder in two contingencies:

First: He is assured of this continuing or periodical return or dividend from the profits of the corporation, if any, in preference to any dividend on the common stock.

Secondly: As an additional inducement, he is assured that in case of dissolution and distribution of the assets of the corporation between its various classes of stockholders, if the anticipated profits have proved insufficient to produce such a dividend or return upon its capital, then that he shall receive it upon such distribution of the capital assets in preference to any distribution of such assets to the common stockholders. While he is not a creditor of the corporation he has in the distribution of such assets, as between himself and the

common stockholders, a preferential claim to the assets which is superior to the claim of the common stockholders, and this because the contract so provides.

Unless this is the proper construction of such provisions for the payment of accumulated dividends out of the assets when distributed, then this provision is illusory and without value, because if such returns are, in any event, only payable out of net earnings, they are assured by the previous provision that they shall be paid from that source. If there are net earnings, they cannot be paid to the common stockholders, either before or upon distribution of the assets, until after the prior claim of the preferred stockholders thereto has been satisfied. No additional safeguard then as to this prior claim of the preferred stockholders upon the profits would be either necessary or appropriate. In providing for the payment of the par value of the preferred stock with all of its unpaid accumulations out of the assets of the corporation, in liquidation, the purpose was to furnish this additional security and to make the deferred and unpaid dividends, as well as the par value of the preferred stock, a claim upon the assets of such a company superior to that of the common stock.

In the view thus indicated, we are but expressing in different language what is already sufficiently expressed in the charter provision under review.

[5, 6] The contrary view unduly emphasizes the conceded fact that it is fundamental that capital cannot be impaired by the declaration of dividends out of the capital assets of a corporation, but they must be declared out of earnings, and hence that "cumulative dividends" like other dividends must be always limited by such earnings to dividends which having been earned, the board of directors, in the exercise of a proper discretion, should have also declared. This view, how-

ever, apparently ignores the fact that when the capital assets are being finally distributed, this reason fails. As here used, the words "cumulative" and "accumulative" amplify the word "dividends" and signify continuing growth in volume in periodical accretions.  The word "cumulative," as commonly used in such contracts, refers to dividends which accumulate only because they have not been earned, or if earned, which have neither been declared nor paid.  Cumulative dividends generally signify returns which gather volume by addition— delayed payments on account of anticipated dividends, which although not presently earned confer upon the stockholder the contractual right to require payment thereof in full out of future earnings before there can be any dividend on the common stock.  Cumulative dividends in a going concern, under the provision here being considered, and generally, can only be declared out of earnings by the directors, but not otherwise, because the capital cannot be thus impaired.

[7] What then results if the company dissolves, pays its debts and then proposes to distribute its assets? Why allude to dividends at all in the provision for the distribution of the assets of the company if it is intended only to include dividends which have been earned and declared?  As to such profits so earned no one would question that the holder of this preferred stock has a prior claim therefor in the distribution of the assets of the company over and above the common stock upon which no dividend can be declared until after the dividends on the preferred stock have been first paid or provided for.  The earning of such profits confers this preference.  This being true, the references to unpaid cumulative dividends in the provisions for the distribution of the assets of the company are mere surplusage if construed merely to secure dividends

which have been earned.   Of course, it is fundamental
that in construing every contract all of the language
which is used should be considered, and that no lan-
guage should be construed to be inoperative unless the
context makes such a construction inevitable.   We find
then in both of these charters that the parties were not
content to provide that dividends on preferred stock
should accumulate and be a prior charge upon all
future earnings, which the corporation should "be
bound to pay," as is expressed in the Johnson & Briggs
charter, while the corporation was operating.   Both
charters go further and provide also for the satisfaction
of the accumulated and unpaid dividends in case of dis-
solution, or distribution of the assets when there can be
no future earnings.   This latter provision is without
significance unless construed to give an additional as-
surance of the anticipated return or dividend to the pre-
ferred stockholders.   If the earnings are sufficient, their
right to have the dividend declared and paid out of such
earnings is already clear.   If unpaid, it accumulates
and must be paid therefrom, but, and because it was
anticipated that the earnings might prove to be insuffi-
cient, the payment of such accumulations, designated
as "dividends accumulated and unpaid," is promised
out of the assets, in case of liquidation and distribution
of such assets "before any amounts" shall be payable
to the common stockholders.

There has, as it seems to us, been too much refine-
ment of reasoning and literal construction in some of
the cases.   The case cited in the opinion of the arbi-
trator, *Michael* v. *Cayey-Caguas Tobacco Co.*, 180 N. Y.
Supp. 532, 190 App. Div. 618, supports the contrary
view, and there have been several English cases which
are cited in the extended note in 6 A. L. R. 822, with
the same tendency, though the language slightly differs

in each case.    All agree, however, that the solution of
the question depends upon the proper construction of ·
the contract in the particular case; and in *Spear* v.
*Rockland-Rockport Lime Co.*, 113 Me. 285, 93 Atl. 754,
6 A. L. R. 793, it is said that such contracts are con-
strued most strongly against the corporation.

[8] Our conclusion is that the contract here involved
clearly undertook to assure to the holders of the pre-
ferred stock not only that their dividends should ac-
cumulate from time to time and be paid out of the net
earnings of the corporation, if any, but, anticipating
that there might be no net earnings, that it might be
necessary to dissolve the corporation and distribute its
capital assets to its stockholders, the contract here also
undertook to assure the payment of such accumulations
in this contingency.    We believe that a casual reading
of either of these charters would lead either the legal
expert or the unlearned man to the view which we have
indicated, which careful study confirms, and that this
construction effectuates the intention of the parties.
Any more literal construction of such language defeats
the manifest purpose of the contracting parties.    The
common understanding of such contracts is that the
preferred stockholders take no risk either as to the re-
turn of par value of their stock, together with the lim-
ited dividends which they are conditionally promised
thereon, if the assets for distribution are sufficient to
reimburse them, and for this promise the preferred
stockholders waive all expectation or possibility of any
additional profit, however great the ultimate profits
may be.    These surplus profits in such cases belong to
the common stockholders, and they on their part, for
this hope of unlimited gain, grant to the preferred
stockholders, who have no such opportunity, prior
claims upon assets in liquidation, as well as upon earn-
ings.

The unrestricted rights of the common stockholders to all of the surplus earnings of the corporation after the prior rights of the preferred stockholders have been safeguarded, as well as the limitations of the rights of the preferred stockholders to the cumulative preferred dividends as specified by the contract, are well illustrated by these cases: *Stone* v. *United States Envelope Co.*, 119 Me. 394, 111. Atl. 536, 13 A. L. R. 422; *Scott* v. *B. & O. R. Co.*, 93 Ed. 475, 49 Atl. 327; *Niles* v. *Ludlow Valve Mfg. Co.*, 202 Fed. 141, 120 C. C. A. 319; *Basset* v. *U. S. Foundry Co.*, 75 N. J. Eq. 539, 73 Atl. 514; *Will* v. *United L. P. Co.* (1912), L. R. 2 Ch. Div. 571, (1914) H. or L. R. A. C. 11.

We hardly think it necessary to discuss any other incidental questions. The stock here involved was issued as preferred stock and one dividend was paid thereon. This payment fixed the date from which the stock should bear dividends, and the contract assured the stockholder that these dividends should accumulate if not paid.

For the reasons here indicated, which are perhaps better expressed in the *Drewry-Hughes Case*, our conclusion is to reverse the judgment of the trial court, and enter judgment here in favor of J. E. Johnson, administrator of C. I. Johnson, deceased, for the sum of $12,150.00 which is the conceded amount of unpaid dividends on the preferred stock.

*Reversed.*