[Civ. No. 344. Fourth Appellate District.—March 7, 1931.]

F. W. FAWKES et al., Executors, etc., Respondents, v. FARM LANDS INVESTMENT CO. (a Corporation), Appellant.

Victor Ford Collins, Arnold M. Cannan, Paul S. Honberger and Stanley Guthrie for Appellant.

Merriam, Rinehart & Merriam and Harvey M. Parker for Respondents.

LAMBERSON, J., *pro tem.*—The action is one to have declared and determined the rights of C. F. Goodwin, former plaintiff (for whom F. W. Fawkes and Hiram C. Hubbard, as executors of the Estate of. C. F. Goodwin, Deceased, have been substituted), as the owner of ten (10) shares of the preferred capital stock of the defendant corporation, and to recover cumulative dividends thereon, amounting to the sum of $426.33.

The trial court found that the principal purpose for which the defendant corporation was organized, was to buy, sell and deal in real estate; that its articles of incorporation provide that the capital stock of the corporation should consist of 5,000 shares of the par value $100 each, 4,500 shares to be common stock and 500 shares to be preferred stock; that the terms of the preference were set forth in the articles of incorporation, and were indorsed upon the certificate of stock which was issued to said C. F. Goodwin on or about April 2, 1912; that on or about April 2,

1915, said C. F. Goodwin received from the corporation, cumulative yearly dividends upon his ten shares of stock for the preceding three years, but has received no other sum on account of dividends; that on the eighth day of June, 1921, the board of directors adopted a resolution authorizing the discontinuance of the business of the defendant, and the final dissolution of the corporation, and the division and distribution among the stockholders of its capital assets in accordance with their respective interests; that pursuant to said resolution the defendant thereafter caused application to be made to the commissioner of corporations of California for permission to divide and pay out of the capital stock of the corporation one hundred per cent of the par value of the preferred stock and ten per cent of the par value of the common stock; that on June 15, 1921, the commissioner of corporations issued a permit authorizing the defendant to distribute a portion of its capital assets among its stockholders, first, to the preferred stockholders as their interests should appear, and thereafter to the holders of the common stock as their interests should appear, subject to several conditions, among them being that no final distribution of the capital assets should be made unless and until dissolution proceedings had first been had, and a final decree entered therein under the provisions of the Code of Civil Procedure; that no indebtedness of said corporation should thereafter be created or permitted to exist in excess of the reasonable value of the then existing capital assets, and further, that the consent in writing of holders of not less than two-thirds of the outstanding capital stock agreeing to the distribution of the capital assets, must be filed with the state corporation department before the permit should become effective; that pursuant to said resolution and permit defendant paid to plaintiff Goodwin on May 12, 1922, the sum of $1,000, being the par value of his preferred stock, but that defendant has made no further payment, and has insisted that no additional payments can be made except out of profits and net earnings, and disclaims all further liability to said C. F. Goodwin on account of cumulative dividends; that defendant has distributed to the holders of common stock, dissolution dividends aggregating $53 per share, but that defendant is still possessed of property and assets which are more than

sufficient to pay any and all dissolution dividends due to the holders of preferred stock under the terms of the preference clause.

The preference clause set forth in the articles of incorporation, so far as material here, was substantially as follows: That holders of preferred stock shall be entitled to receive when and as declared, cumulative yearly dividends at the rate of six per cent per annum in each and every year in preference and priority to any payment of dividends on common stock for such year; that the preference stock or any part thereof shall be subject to redemption at the option of the company at any time after January 1, 1916, at the price of $105 per share, plus the amount of dividends cumulative and unpaid thereon at the date of redemption. (Apparently no action was taken by the corporation to effect a redemption.) The preference agreement then provides as follows:

"In case of dissolution or termination of the corporation, the preferred stock and the holders thereof, shall also be entitled to preference in the distribution of the assets and property of the corporation, and any and all such assets and property in case of such dissolution, shall be applied first, to the payment in full of the principal of the said preferred stock at par, with all cumulative dividends thereon, in preference or priority to any payment upon the common stock; and second, any balance remaining shall be divided equally per share among the holders of the common stock."

The trial court by its judgment decreed that said plaintiff C. F. Goodwin, as the holder of the preferred capital stock of defendant, was entitled to receive and have paid and distributed to him upon and in connection with the liquidation of defendant, and out of the assets and property thereof, and in addition to the full principal par value, cumulative dividends thereon computed at the rate of six per cent per annum upon the par value from April 2, 1915, to and including May 12, 1922, aggregating the sum of $426.33 with interest at the rate of seven per cent per annum from May 12, 1922, to date of payment before any payment or distribution shall thereafter be made to any holder of common stock; that prior to distribution of any portion of the assets of said corporation to holders of

common stock, the corporation shall pay said sum of $426.33 with interest, out of the principal and assets belonging to said corporation.

Defendant appeals from the judgment and urges that inasmuch as no profits were earned during the period covered by the failure of the corporation to declare or pay dividends upon the preferred stock, no dividends could have been declared, and that the directors are not empowered to distribute any sum other than the amount of the par value of the preferred capital stock. Furthermore, that the word "dividend" can only be construed in the light of its use in the statutes of California, and that the directors of the corporation must not make dividends except from the surplus profits arising from the business thereof.

The complaint alleged that the defendant had realized profits on sales of lands, and that the lands held by the corporation had greatly increased in value, and that such profits were far in excess of expenses. The answer denied these allegations and alleged that between December 31, 1915, and December 31, 1922, there was a deficit each year between the resources and liabilities of the corporation. The court found that the allegations of the answer were not true, but there was no affirmative finding in regard to surplus or net profits during such years. In view of the conclusions which we shall announce, we regard the absence of such a finding as immaterial.

The evidence is amply sufficient to sustain the findings of the court that the corporation had, after the distribution of dissolution dividends aggregating $53 upon each share of the common stock, property and assets more than sufficient to pay any and all dividends due to the holders of the preferred stock under the terms and provisions of the preference clause.

Section 290 of the Civil Code authorizes the classification of the capital stock of corporations into preferred and common stock, and provides that the articles of incorporation shall state in clear and succinct manner the nature and extent of the preference granted, and except as to the matters and things so stated, no distinction shall exist between said classes of stock or the owners thereof.

The articles of incorporation create a contractual relation between the corporation and its various stockhold-

ers and between the stockholders themselves. Fundamentally, as to rights between themselves, the stockholders of a corporation may agree among themselves and enter into such contracts as are not in contravention of any law of the state, and as do not infringe upon the rights of the public or the creditors of the corporation to have its capital stock remain unimpaired. ■ It is also fundamental in the law of corporations that the directors have no authority to declare a dividend upon any of its stock, common or preferred, unless the dividends are earned, and a corporation, therefore, cannot agree to pay annual dividends on preferred stock at all events without regard to the earnings of the corporation being sufficient to pay them.

■ The corporation is, however, free to contract as to the manner in which the property and assets of the corporation shall be distributed in the event of dissolution or liquidation. Section 309 of the Civil Code of California, as it read at the time of the incorporation of the appellant, recognized this condition in a provision as follows:

"Nothing herein prohibits a division and distribution of the capital stock of any corporation which remains after the payment of all its debts upon its dissolution, or the expiration of the terms of existence."

This provision was repeated in later amendments of that section. ■ There is nothing in the section in question which inhibits a contract providing for the distribution of the assets of the corporation in the event of dissolution or liquidation in the manner set forth in the articles of incorporation of appellant (*Dominguez Land Corp.* v. *Daugherty,* 196 Cal. 468 [238 Pac. 703]).

The provisions of the preference agreement amount to nothing more than a plan for the division of the property of the corporation upon its dissolution, and the measure or standard of such division was the dividend rate fixed by the articles of incorporation to be paid to the owners of the preferred stock.

The object to be achieved in the issuance of preferred stock is ordinarily twofold. First, the investor is to be assured of a continued or periodical return, or dividend or dividends from the profits of the corporation without the uncertainty attendant upon the ownership of common stock; and secondly, the investor is to be assured, as an

additional inducement to invest, that in the event of dissolution and distribution of the assets of the corporation between the two classes of stockholders, if the anticipated profits have proved insufficient to produce such a dividend or return upon its capital stock, then he shall receive it upon such distribution of the capital assets in preference to any distribution to the holders of the common stock. (*Johnson* v. *Johnson & Briggs, Inc.,* 138 Va. 487 [122 S. E. 100, 102].)

Such a plan is often used and plays a prominent part in the recognized business practice of the country. The plan is without value if cumulative dividends are to be paid only out of net earnings. In discussing the meaning of the terms "dividends" and "cumulative dividends", the court in the last-cited case, said:

"The contrary view unduly emphasizes the conceded fact that it is fundamental that capital cannot be impaired by the declaration of dividends out of the capital assets of a corporation, but they must be declared out of earnings, and hence that 'cumulative dividends' like other dividends must be always limited by such earnings to dividends which having been earned, the board of directors, in the exercise of a proper discretion, should have also declared. This view, however, apparently ignores the fact that when the capital assets are being finally distributed, this reason fails. As here used, the words 'cumulative' and 'accumulative' amplify the word 'dividends' and signify continuing growth in volume by periodical accretions. The word 'cumulative', as commonly used in such contracts, refers to dividends which accumulate only because they have not been earned, or if earned, which have neither been declared nor paid. Cumulative dividends generally signify returns which gather volume by addition—delayed payments on account of anticipated dividends, which, although not presently earned, confer upon the stockholder the contractual right to require payment thereof in full out of future earnings before there can be any dividend on the common stock. Cumulative dividends in a going concern, under the provision here being considered, and generally, can only be declared out of earnings by the directors but not otherwise, because the capital cannot be thus impaired.

"What then results if the company dissolves, pays its debts, and then proposes to distribute its assets? Why allude to dividends at all in the provision for the distribution of the assets of the company, if it is intended only to include dividends which have been earned and declared? As to such profits so earned, no one would question that the holder of this preferred stock has a prior claim therefor in the distribution of the assets of the company over and above the common stock, upon which no dividend can be declared until after the dividends on the preferred stock have been first paid or provided for. The earning of such profits confers this preference. This being true, the references to unpaid cumulative dividends in the provisions for the distribution of the assets of the company are mere surplusage, if construed merely to secure dividends which have been earned. . . .

"There has, as it seems to us, been too much refinement of reasoning and literal construction in some of the cases. The case cited in the opinion of the arbitrator (*Michael* v. *Cayey-Caguas Tobacco Co.*, 190 App. Div. 618 [180 N. Y. Supp. 532]) supports the contrary view, and there have been several English cases which are cited in the extended note in 6 A. L. R. 822, with the same tendency, though the language slightly differs in each case. All agree, however, that the solution of the question depends upon the proper construction of the contract in the particular case. . . . ''

While there is some division of authority, and the question has not been passed upon by the courts of California, we are of the opinion that the weight of authority and sound reasoning is with the decision of the court in the case of *Drewry-Hughes Co.* v. *Throckmorton,* 120 Va. 859 [92 S. E. 818], in which it was held that a provision in a corporate charter and preferred stock certificate giving preferred stock cumulative dividends, and providing that in case of dissolution such stock should have a prior claim for its face value, and any arrears of dividends due and unpaid to it, gives a preferred claim for the face value of the preferred stock and cumulating dividends to the date of the corporation's dissolution, although such dividends may not have been earned. To the same effect are *Westerfield-Bonte Co.* v. *Burnett,* 176 Ky. 188 [195 S. W. 477]; *Johnson* v. *Johnson & Briggs, Inc., supra; National Bank*

v. *Amoss,* 144 Ga. 425 [Ann. Cas. 1918A, 74, 87 S. E. 406];
*Page* v. *Whittenton Mfg. Co.,* 211 Mass. 424 [97 N. E.
1006].

Appellant places considerable reliance upon the case of
*Michael* v. *Cayey-Caguas Tobacco Co.,* 190 App. Div. 618
[180 N. Y. Supp. 532, 533], heretofore referred to. While
the language of the opinion in that case supports the con-
trary view already referred to and is one of the leading
authorities for such view, it should be noted that the pref-
erence clause under consideration in that case was mate-
rially different from the preference clause now under con-
sideration. It read as follows: "The *surplus assets and
funds* of the company shall be applied first to the payment
in full par value of said preferred shares and all accrued
and unpaid dividends thereon." The distinction between
that provision and the terms of the preference clause con-
tained in appellant's articles of incorporation is obvious.

Appellant makes the point that the permit issued
by the commissioner of corporations was invalid because not
authorized by any statute in force at the time the permit
was granted. Respondents' right to enforce their claims to
preferred dividends was founded upon a contractual rela-
tion which was not invalid under the laws and the corpora-
tion commissioner simply recognized the contract as a valid
contract. The right of action was predicated upon the con-
tract and not, as appellant contends, upon the permit.
Having voluntarily made application to the commissioner,
mistakenly or otherwise, and having assumed to act under
such permit in the distribution of dissolution dividends, the
appellant corporation cannot now be heard to say that
the action of the corporation commissioner was without
authority.

In the case of *Burne* v. *Lee,* 156 Cal. 221, at 229 [104
Pac. 438, 442], the court said:

"The very section of the Civil Code relied on by appel-
lants—section 309—while prohibiting a division or distribu-
tion among the stockholders of any part of the capital
stock, declares further that, 'nothing herein prohibits a
division and distribution of the capital stock of any corpo-
ration which remains after the payment of all its debts
upon its dissolution, or the expiration of its term of ex-
istence'. As the owners of all the capital stock and hence

beneficially interested in all the property of the corporation after satisfaction of the claims of its creditors, the contracting parties may obtain a dissolution of the corporation, wind up all its affairs, dispose of its property, and being entitled to the proceeds, be able to carry out the terms of the agreement. This would be one method of carrying out their contract, and as it is a legal one and one which it is possible to pursue, the contention of the appellant that the contract is in violation of the prohibitory legislation of the Civil Code, is disposed of.''

We are of the opinion that respondents are entitled to the declaratory relief decreed by the trial court and the judgment is therefore affirmed.

Marks, Acting P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 6, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 4, 1931.