ESTHER WOUK, Respondent, *v.* ISAAC MERIN et al., Appellants, et al., Defendants.

First Department, March 23, 1954.

*Gustave J. Rosen* for appellants.

*Louis Boehm* of counsel (*Robert L. Boehm* on the brief; *Louis Boehm,* attorney), for respondent.

*Per Curiam.* The rights of the preferred stockholders are determined by the precise language of the certificate in question. We think the trial court erred as a matter of law in its construction of the certificate of incorporation as amended. So far as relevant, the amended certificate provides that on dissolution, after payment of debts, the assets and funds of the company are first to be applied to payment of the par value of preferred stock with ''any arrearage of dividends to which the holders of such Preferred Stock may be *entitled* ''. (Italics ours throughout.) But the certificate also provides that preferred stock '' shall be *entitled* to cumulative dividends * * * *as and when* declared ''. The word '' cumulative '' must be considered in the light of the provisions declaring when the preferred stock is '' entitled '' to dividends. Under this certificate it is only the dividends to which the preferred becomes '' *entitled* '' that are cumulative. We construe this certificate to mean that arrearage of preferred dividends on dissolution refers only to declared dividends which were not paid. As to undeclared dividends herein, the preferred stockholders never became '' *entitled* thereto '' and they did not accumulate (cf. *Michael* v. *Cayey-Caguas Tobacco Co.,* 190 App. Div. 618, 623, 632; *Matter of Roberts & Cooper, Ltd.* [1929], 2 Ch. 383, 386, and Note, Preferred stockholders' rights, upon liquidation to dividends or dissolution, 25 A. L. R. 2d 790, 800).

But even if this ruling, as a matter of law, were held to be erroneous, the trial court's finding that the oral testimony and the exhibits established that plaintiff did not waive her rights, if any, to the payment of cumulative preferred unpaid dividends and did not agree to the payment of so-called bonuses in lieu

thereof, is against the weight of the credible evidence. In fact plaintiff's oral testimony at the trial is met by the documentary evidence. For this it is not necessary to rely on any resolution claimed to be passed at the meeting of June 23, 1949. Plaintiff concededly was present and consented to the resolution passed at the meeting of stockholders on October 29, 1948, embodied in the written agreement also dated October 29, 1948, and signed by all of the stockholders including this plaintiff. That agreement expressly provided that the agents to accomplish the agreed form of dissolution in kind should distribute the assets of the corporation " in the ratio that the percentage of the stock ownership of each stockholder bears to the total outstanding stock." This form of dissolution was probably adopted with tax benefits in mind. Pursuant to the resolutions and the agreement, plaintiff with all the other stockholders surrendered her preferred stock for retirement and plaintiff was paid the full par value thereof, viz., $45,166.66. After she had received the full par value and nothing further on the undeclared and unpaid preferred dividends, plaintiff, on November 6, 1949, wrote to defendants, Webb and Carmel as follows: " You have been fair and even generous in meeting all moral obligations in the dissolution of the Fox Square Laundry."

In addition, minutes of official meetings show that plaintiff, during the course of the dissolution, was present, consented to and approved numerous and varied acts of Rosen and Schlesinger acting as trustees of all the stockholders, in collecting the corporate assets on dissolution, paying debts and distributing amounts due the various stockholders pursuant to the plan adopted and approved by all. The agents or trustees also filed interim accounts of their proceedings with the stockholders including this plaintiff. While no formal resolution regarding the bonus payments could have been or was effectively adopted (because of the interest of directors who were preferred stockholders) the bonus arrangement was made by agreement of all preferred stockholders including plaintiff.

Although the figures mentioned are large, the net amounts actually in litigation between the parties are relatively small, and instead of prolonging litigation, the parties would be better advised if they adjusted their differences.

If Webb and Merin are liquidating directors, so is plaintiff. There is no claim of wrongdoing on their part. Webb did not get a bonus. No individual acts of misfeasance are proved or claimed against either of them and under the agreement of

October 29, 1948, they did not receive as agents any of the property. As to them, the complaint should be dismissed, thus leaving as sole remaining individual defendants served, only Rosen and Schlesinger.

As Rosen and Schlesinger, however, admittedly acted as agents or trustees in the corporate dissolution, and have a substantial balance in their hands as such, although they informally accounted to the stockholders including the account annexed to their answer in this litigation, we think a final accounting by Rosen and Schlesinger of all their transactions as agents or trustees should be directed, for the benefit of all stockholders. The learned Official Referee, however, should not permit the accounting or the reference to be prolonged unduly.

The interlocutory judgment appealed from should be modified by (1) reversing the first decretal directing that all undeclared and unpaid dividends on the preferred stock shall be paid to preferred stockholders; (2) modifying the second decretal paragraph by adding thereto a decretal that plaintiff with the other preferred stockholders waived any right she might have or claim to preferred undeclared and unpaid dividends, consented to the payment of the bonus in question, and is accordingly entitled, in addition to what she has already been paid for her preferred stock, to the $5,000 bonus agreed to be paid to her; (3) adding a decretal that the complaint should be dismissed against defendants appellants Merin and Webb; and (4) modifying the third decretal to provide that a complete but brief account be filed by defendants Rosen and Schlesinger the sole remaining individual defendants to the date thereof showing the assets received by such defendants, the disposition thereof and the balance in their hands; and that the Referee appointed hear and report accordingly to Special Term. All findings of fact and conclusions of law by the trial court contrary to this opinion should be reversed and contrary findings made. Settle order.

PECK, P. J. (dissenting). On the facts, I cannot find such a clear showing of waiver as to justify reversing the findings of the trial court. There were extended negotiations between the parties and a number of false starts toward a bonus arrangement, but it seems clear that the contemplation of a bonus arrangement was premised upon Webb and Carmel assuming the payment of the bonus as a gift to the larger preferred stockholders, as an equalization measure, and that when Webb

announced that he could not follow through on this program the matter drifted without ever reaching a firm agreement. There was no valid corporate resolution in the matter and I am unable to see that there was any firm informal agreement. Indeed, it appears that the bonus arrangement was positively disadvantageous to Mrs. Wouk and there is no reason why she should have accepted it. It is worthy of note in this connection that she is not in the same position with Merin and Podolnick, who by reason of the larger bonus payments they would have received would have derived some advantage from the arrangement.

On the law, I am satisfied that the weight of authority, accepted understanding of what the law is and should be and modern corporate practices favor the plaintiff. *Michael* v. *Cayey-Caguas Tobacco Co.* (190 App. Div. 618) is perhaps distinguishable (Note, 25 A. L. R. 2d 800, 806). But there has been much growth in corporate experience and law in the intervening years. The English case upon which the *Michael* decision relied has since been rejected in England (*Matter of Springbok Agric. Estates, Ltd.*, [1920], 1 Ch. 563; cf. *Matter of Dominion Tar & Chem. Co., Ltd.*, [1929] 2 Ch. 387, with *Matter of Roberts & Cooper, Ltd.*, [1929] 2 Ch. 383); and the generality of decisions in this country has established the law in conformity with plaintiff's contention in this case (*Hay* v. *Hay*, 38 Wn. [2d] 513 [1951]; *Penington* v. *Commonwealth Hotel Constr. Corp.*, 17 Del. Ch. 394 [1931]; *Willson* v. *Laconia Car Co.*, 275 Mass. 435 [1931]. See Note, 25 A. L. R. 2d 788.) I think that on the basis of reason, practice and authority we should follow the line of decisional law.

I am further persuaded to this view by the like treatment which is accorded by the certificate of incorporation to preferred stockholders in respect to accumulated dividends on redemption and dissolution. On redemption a preferred stockholder is certainly entitled to the contemplated benefits of a provision for the payment of accumulated dividends and a similar provision in respect to dissolutions can hardly be given a different construction. It is noted that the appellants in this case recognize the force of this analogy and try to argue in their brief that there is some difference in the certificate provisions as to the payment of accumulated dividends on redemption and on dissolution.

It is true that there is for no apparent reason a slight difference in wording in case of redemption and dissolution,

but I cannot see that the words have any different meaning. In the case of redemption, the provision is for the payment of the redemption value of the preferred stock "together with any accumulated dividends due thereon", whereas in the case of dissolution it is for the payment of the par value of the preferred stock "with any arrearage of dividends to which the holders of such Preferred Stock may be entitled."

The appellants concede that in the case of redemption the preferred stockholders would be entitled to accumulated dividends which accrued by the mere lapse of time. The argument that in the case of dissolution, on the contrary, they are restricted to arrearages of dividends — not accumulated dividends — attempts a distinction which to my mind lacks substance and might encourage the use of dissolutions as a device to wipe out dividend rights. I see no difference between "arrearage of dividends" and "accumulated dividends".

Accordingly, I dissent and vote to affirm.

DORE, COHN and CALLAHAN, JJ., concur in *Per Curiam* opinion; PECK, P. J., dissents and votes to affirm, in opinion in which BOTEIN, J., concurs.

Judgment modified in accordance with the opinion herein and, as so modified, affirmed. Settle order on notice.