[Civ. No. 11316. First Appellate District, Division Two.—March 8, 1940.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association) et al., Plaintiffs and Appellants, v. WEST END CHEMICAL COMPANY (a Corporation) et al., Defendants and Appellants; EARL RYAN et al., Interveners and Appellants.

Louis Ferrari, Fitzgerald, Abbott & Beardsley and Aaron N. Cohen for Plaintiffs and Appellants.

John L. Reith and Thelen & Marrin for Defendants and Appellants.

T. P. Wittschen for Interveners and Appellants.

SPENCE, J.—Plaintiffs, purporting to act as representatives of themselves and all other owners of preferred stock of the West End Chemical Company, brought this action for declaratory relief. They named as defendants the corporation, the members of the board of directors thereof and certain owners of common stock thereof, the last mentioned de-

fendants being named as representatives of themselves and all other owners of said common stock. A complaint in intervention was later filed by certain persons who owned both preferred and common stock. All parties agreed that a controversy existed as to the rights of the owners of the preferred and common stock, respectively, to receive dividends from said corporation as a going concern and they sought a declaration of said rights. The cause was submitted to the trial court upon stipulated facts.

The trial court entered its judgment as follows:

"1. That each share of preferred stock is entitled to receive dividends amounting to six per cent (6%) of its par value for each year since its issuance, less dividends heretofore paid thereon (which dividends heretofore paid thereon amounted to fifteen per cent (15%) of the par value of each share of preferred stock at the time of the commencement of the action), before any dividends are paid upon any share of common stock. The court does not declare or adjudge, nor does it attempt to declare or adjudge, the rights of the preferred stock in the event of redemption, or the relative rights of either class of stock in the event of dissolution.

"2. Neither plaintiffs nor their attorneys are entitled to any attorneys' fees to be allowed by the court in this action.

"3. Plaintiffs are entitled to their proper costs and disbursements in the sum of $25.25."

The following appeals were taken: (1) An appeal by the defendant corporation and the defendant members of the board of directors, other than defendants F. W. Weider and Fred G. Stevenot, from the portions of the judgment found in the paragraphs numbered 1 and 3 therein. (2) An appeal by the defendant common stockholders from the same portions of the judgment. (3) An appeal by the interveners from the same portions of the judgment. (4) An appeal by plaintiffs from the portion of the judgment found in the paragraph numbered 2 therein.

All of said appeals have been presented on a single transcript but each of the appealing groups has appeared by separate counsel and has filed separate briefs. The first three appeals above listed constitute the appeals involving the main question in controversy. Said appeals will be considered together and will be referred to herein as the appeals of

defendants and interveners. The fourth appeal above listed involves only the question of counsel fees and will be referred to herein as the appeal of plaintiffs.

*Appeals of Defendants and Interveners.*

The contentions of the appealing groups in all three appeals of defendants and interveners is that the trial court erred in its declarations of the rights of the owners of the preferred and the common stock, respectively, as found in paragraph numbered 1 in the judgment. The declarations of the trial court, found in said paragraph 1, were in accord with plaintiffs' claims and no question is raised respecting the propriety of the portion of the judgment relating to costs, found in paragraph numbered 3 therein, in the event that the trial court's declarations found in paragraph 1 were correct.

We will briefly summarize the material facts found in the stipulation filed in the trial court. The defendant corporation was organized in 1920. The original articles of incorporation provided for 3,000,000 shares of common stock having a par value of $1 per share. In 1923, the articles were amended to provide for 5,000,000 shares of stock divided into 3,000,000 shares of common stock and 2,000,000 shares of preferred stock, all shares having a par value of $1 per share. Between 1920 and 1923, the corporation issued 2,012,197 shares of common stock. Between 1923 and 1925, the corporation issued 1,609,241 shares of preferred stock. The foregoing figures represent the amount of stock of each class which was outstanding at the time this action was commenced in 1937. There were then approximately 2,300 preferred stockholders and approximately 2,500 common stockholders. Dividends on the preferred stock had been paid at the rate of 6 per cent in each of the years 1935 and 1936 and at the rate of 3 per cent in the year 1937. No other dividends had been paid on the preferred stock and no dividends had been paid at any time on the common stock. At the time of the commencement of this action, the corporation had an accumulated earned surplus of approximately $400,000 but the board of directors asserted that it would not declare or pay upon the preferred shares any dividend in excess of 6 per cent during any one year until a judicial determination had been had with respect to the respective rights of the common and preferred shareholders to receive dividends. It was stipulated

that a controversy existed "as to whether or not the shares of preferred stock are cumulative and whether the holders thereof are entitled to receive dividends at the rate of six per cent (6%) per annum for each year since the date of the issuance thereof (less the fifteen per cent (15%) aggregate dividends heretofore declared and paid thereon) before any dividends can be declared or paid on the common stock".

The parties were further agreed upon the proposition that the respective rights of the two classes of stockholders depended upon the contract of the parties, which in this instance consisted of the amended articles of incorporation (the preference provisions of which were carried into the stock certificates issued to the owners of the preferred stock), and the statutory provisions which were in force at the time and became a part of the contract.

The preference provisions of said amended articles of incorporation read as follows:

"Of the said five million (5,000,000) shares, three million (3,000,000) shares shall be common stock, and two million (2,000,000) shares shall be preferred stock having the following preferences, to-wit:

"(a) Said preferred shares to have priority over said common shares to the full par value thereof in the matter of distribution of the assets of this corporation, upon any dissolution or winding up of said corporation.

"(b) Said preferred shares to have priority over said common shares in the distribution of any dividends, to the end that dividends shall be first paid upon said preferred shares to an amount equal to 6% per annum of the par value thereof, before any dividends shall be paid upon said common shares, and the right of said preferred shares to receive such dividends to the amount of said 6% per annum, prior to the payment of any dividends upon said common shares, shall be cumulative.

"(c) In the event that dividends to the amount of 6% are paid upon preferred shares, and thereafter and within the same calendar year, dividends are paid upon common shares up to an amount equivalent to 6% of the par value of said common shares, then thereafter any dividends declared and paid by this corporation within said calendar year shall be applied in equal measure to the subscribed or issued shares of

the corporation without distinction between preferred shares and common shares.

"(d) Said preferred shares shall be subject to the right of the corporation to call in and retire all or any of such shares at any time after two years from and after the date of the issuance of original certificate or certificates evidencing such shares, upon payment by the corporation to the stockholders surrendering certificates of preferred shares so called in, of an amount equal to·105% of the par value of such preferred shares so called, as herein provided; and the manner of calling such shares, and the notice to be given, shall be prescribed by the Board of Directors.''

The statutory provisions which have been called to our attention are as follows:

Section 290, subdivision 6 of the Civil Code (as it read in 1920 and 1923) provided with respect to capital stock divided into common and preferred that "The articles of incorporation shall also state, in clear and succinct manner, the nature and extent of the preference granted, and except as to matters and things so stated, no distinction shall exist between said classes of stock or the owners thereof.'' (Stats. 1915, chap. 743, pp. 1481 and 1482.)

Section 362, subdivision 6 of the Civil Code (as it read in 1923 when the articles of incorporation were amended) provided that a corporation might "amend its articles of incorporation . . . to provide for the classification of its capital stock into preferred and common shares, in which event there must be set forth . . . a clear and succinct statement of the nature and extent of the preference granted, and except as to the matters and things so stated, no distinction shall exist between said classes of stock or the owners thereof''. (Stats. 1915, chap. 739, p. 1457.)

Our reading of the contract of the parties leads us to the conclusion that "the shares of preferred stock are cumulative'' and that the holders thereof are entitled to receive "cumulative dividends'', viz.: dividends at the rate of six per cent per annum from the date of issuance before any dividends are paid on the common stock as declared by the trial court in paragraph 1 of the judgment. We believe there is a "clear and succinct statement'' of this preference in paragraph b of the amended articles of incorporation where it

is provided that "the right of said preferred shares to receive such dividends to the amount of said 6% per annum, prior to the payment of any dividends upon said common shares, shall be cumulative".

The use of the word "cumulative" in such contracts has been quite common for a long period of time and said word has a well understood meaning. In *Fawkes* v. *Farm Lands Investment Co.*, 112 Cal. App. 374, the court said at page 380 [297 Pac. 47] : "The word 'cumulative,' as commonly used in such contracts, refers to dividends which accumulate only because they have not been earned, or if earned, which have neither been declared nor paid. Cumulative dividends generally signify returns which gather volume by addition—delayed payments on account of anticipated dividends, which, although not presently earned, confer upon the stockholder the contractual right to require payment thereof in full out of earnings before there can be any dividend on the common stock". (See, also, *Spear* v. *Rockland-Rockport Lime Co.*, 113 Me. 285 [93 Atl. 754, 6 A. L. R. 793] ; *Knight* v. *Alamo Mfg. Co.*, 190 Mich. 223 [157 N. W. 24, 6 A. L. R. 789] ; *Allied Magnet Wire Corp.* v. *Tuttle*, 199 Ind. 166 [154 N. E. 480, 156 N. E. 558, 50 A. L. R. 252] ; 11 Cornell Law Quarterly, pp. 230, 233, 234.)

In other words, the ordinary and well understood meaning of the word "cumulative", when used in describing the preferential right accorded to the holder of preferred stock, is that such holder is entitled to accumulated dividends on such preferred stock at the agreed rate for all years following the issuance of such preferred stock, and without regard to the earnings of the corporation in any particular year during that period, before any dividend can be paid upon the common stock. This proposition seems to be conceded by appellants, but they take the position that the preferred stock in question is not a "truly cumulative preferred stock" but is a preferred stock entitled only to certain preferential rights to dividends, not including, however, the right to what is commonly known as "cumulative dividends". The three groups of appellants do not appear to be entirely in accord as to the exact nature and extent of these preferential rights, but we believe that the divergence of opinion among the three groups on this subject results from their respective attempts

to give to the word "cumulative" a meaning other than its ordinary and well understood meaning.

Said appellants argue that, in construing the contract here, the amended articles of incorporation must be considered as a whole and in the light of the statutory provisions above set forth. This is conceded by respondents. Said appellants further argue said amended articles do not use the expressions "cumulative preferred stock" or "cumulative dividends"; that under paragraph b the priority conferred upon the preferred stock relates to the "distribution of dividends" rather than to "dividends" and that such priority is expressed as being "to an amount equal to 6%" rather than as being "in the amount of 6%"; that the word "cumulative", appearing in said paragraph b, relates to the "right . . . to receive such dividends" rather than to "dividends"; and that there is no express provision for the payment of arrearages in dividends on the preferred stock in paragraph a, relating to rights on dissolution, or in paragraph c, relating to the respective rights of the parties to dividends when dividends are declared upon the common stock in any year, or in paragraph d, relating to rights on redemption. All of these arguments have been extensively developed by the various appealing groups and said arguments might be persuasive if the second clause of paragraph b had been omitted. But when considering a contract as a whole for the purpose of placing a proper construction on said contract, including any particular provision thereof, it seems entirely clear that not only must the particular provision be considered in the light of all other provisions but also that all other provisions must be considered in the light of the particular provision. (Civ. Code, sec. 1641.) If we eliminate from consideration said second clause of paragraph b, it might well be argued that the exact nature of the preference sought to be conferred as to dividends would not be clearly stated as required by statute. But when we take into consideration said second clause, which declares that "the right of said preferred shares to receive such dividends to the amount of said 6% per annum, prior to the payment of any dividends upon said common shares, shall be cumulative", that clause seems to be entirely clear within itself and to clarify any possible doubt which might have otherwise existed, at least with respect to the

respective rights of the parties to dividends from the corporation as a going concern. It was only to that extent that the parties sought declaratory relief and the trial court expressly refrained from declaring the respective rights of the parties in the event of dissolution or redemption. We likewise refrain from declaring the last mentioned rights as those questions are not before us on this appeal.

Said appellants concede that they have found no case directly in point sustaining their contentions. This fact is not particularly significant as the preferences sought to be created by articles of incorporation and the language used by the drafters thereof for that purpose vary greatly. But the significant fact is that no authority has been found in which the word "cumulative" had been used in the articles of incorporation with reference to the preferred right to dividends and in which that word has been held to have had a meaning other than its ordinary and well understood meaning. On the other hand, numerous authorities have been cited in which stock has been held to be cumulative preferred stock and entitled to cumulative dividends, as those terms are generally understood, even though the word "cumulative" had not been used in the articles of incorporation. Here the word "cumulative" was used in the articles with reference to the preferred right to dividends. One group of these appellants refers to this language as "unfortunate language" and said group construes it as creating "only a mongrel, ambiguous cumulative right" differing from the ordinary, cumulative right and giving only the right to accumulations from years in which there were earnings. Another group of these appellants places a construction upon the contract which accords to the preferred stockholders only the rights which they would have admittedly had if the second clause of paragraph b had been entirely omitted. The effect of this construction is to make the preferred stock what is generally understood to be "non-cumulative preferred stock". The third group of these appellants seems to place a construction upon the contract similar to that placed thereon by the group last mentioned but suggests an alternative construction similar to that placed thereon by the group first mentioned. We cannot agree with any of these constructions placed upon the contract by these appellants. We have no doubt that appro-

priate language could be employed in articles of incorporation to provide for a cumulative right different from the ordinary cumulative right but where, as here, the word "cumulative" is employed in the articles with reference to the preferred right to dividends, we are of the opinion that said word should be given its ordinary and well understood meaning unless there is other language found in said articles which compels the conclusion that it was not used in that sense. We find no other language in the articles before us which compels that conclusion.

### *Plaintiffs' Appeal.*

As above stated, plaintiffs appealed from the portion of the judgment reading "Neither plaintiffs nor their attorneys are entitled to any attorneys' fees to be allowed by the court in this action."

The complaint in this action merely sought a declaration of the respective rights of the preferred and common stock to any dividends which might thereafter be declared. Plaintiffs neither alleged facts sufficient to entitle them to any other relief nor did they pray for any other relief except in the following language: "That because this is a representative or class suit the court fix a reasonable sum as and for attorneys' fees which plaintiffs may incur herein and declare the same payable by all the owners and holders of shares of preferred stock out of any cumulative dividends that may hereafter be paid by the defendant corporation following the determination of this action."

The main issue in the case was submitted upon a stipulation which set forth the stipulated facts and further provided that in the event that the court indicated its intention to decide said main issue in favor of plaintiffs, said plaintiffs or their attorneys might then be privileged to offer evidence and urge upon the court the contention that reasonable attorneys' fees should be allowed. After the court indicated its intention to decide the main issue in favor of plaintiffs, a further hearing was had and plaintiffs offered to introduce evidence to show the nature and reasonable value of the services rendered by their attorneys. The defendants and the interveners objected to the introduction of said evidence and the trial court sustained the objection and thereafter inserted

in the judgment the above mentioned portion from which plaintiffs have appealed.

Plaintiffs contend that the trial court erred in sustaining said objection and in refusing to allow attorneys' fees as requested. We find no merit in this contention.

■ The general rule in this state is that attorneys' fees are not recoverable by the successful party in either an action at law or in equity except in certain special instances where such fees are made recoverable by express statutory provision. (*Los Angeles Trust & Sav. Bank* v. *Ward,* 197 Cal. 103 [239 Pac. 847]; *Bank of America etc. Assn.* v. *Moore,* 18 Cal. App. (2d) 522 [64 Pac. (2d) 460]; Code Civ. Proc., sec. 1021; 7 Cal. Jur., p. 286, sec. 27.) There is no express statutory provision allowing the recovery of such fees in actions for declaratory relief or in actions in the nature of representative actions. Furthermore there is no rule to be found in the authorities in this state which will permit the recovery of such fees in an action in equity, as for example an action in interpleader, merely because it might appear just and equitable to allow a recovery of attorneys' fees in such actions. (See *Los Angeles Trust & Sav. Bank* v. *Ward,* *supra.*)

■ Plaintiffs seek to bring themselves within an exception to the general rule which apparently permits the recovery of attorneys' fees in certain actions in equity where the parties prosecuting the action recover, protect, preserve or increase a fund for the benefit of themselves and others and in which actions, the recovery is permitted out of such fund. (*Farmers & Merchants Nat. Bank* v. *Peterson,* 5 Cal. (2d) 601 [55 Pac. (2d) 867]; *Fox* v. *Hale & Norcross S. M. Co.,* 108 Cal. 475 [41 Pac. 328]; 7 Corpus Juris Secundum, pp. 1096–1100; 7 Cal. Jur. 287.) ■ We do not believe that the facts before us bring this case within said exception to the general rule. Plaintiffs did not allege or prove the existence of any fund which was recovered, protected, preserved or increased by the relief granted in this action. They sought no relief other than a declaration of the respective rights of the two classes of stock to any dividends which might thereafter be declared. It is conceded by plaintiffs that it is entirely possible that no dividend will ever be declared out of the existing accumulated surplus and of course it is entirely pos-

sible that prudent management and the exigencies of the affairs of the corporation in the years to come may dictate that no further dividend should ever be declared. We find no justification in the authorities in this state for extending the above mentioned exception to the general rule to cover the situation presented here.

But furthermore, we believe that plaintiffs have misconceived the rule applicable in the class of cases coming within the exception to the general rule. We find no authority holding that in cases coming within said exception the plaintiffs are entitled to recover attorneys' fees under all circumstances. On the contrary, the authorities above cited indicate that the allowance of such recovery rests largely in the discretion of the trial court. (See, also, *Carbon Steel Co.* v. *Slayback,* 31 Fed. (2d) 702; *Salmina* v. *Juri,* 96 Cal. 418, 420 [31 Pac. 365]; notes in 49 A. L. R. 1149 and 107 A. L. R. 749 and authorities cited.) It therefore follows that even in a case coming within said exception, an appellate court should not reverse the portion of the judgment denying such recovery unless it clearly appears that the trial court abused its discretion.

The stipulated facts show that there were 1,609,241 shares of outstanding shares of preferred stock. Of these, the two named plaintiffs owned 368,192 shares or approximately 23 per cent thereof. The interveners, however, owned 369,422 shares of said preferred stock, being more than the amount owned by the named plaintiffs. The stipulation also shows that defendant common stockholders "have some interest as owners and holders of preferred stock in the defendant corporation". The record does not disclose the amount of preferred stock owned by said defendants but for aught that appears, all of the remaining preferred stock may have been owned by them. It is true that said interveners and defendants owned more common stock than preferred stock and they therefore vigorously opposed plaintiffs' claims and employed their own counsel for that purpose. Under these circumstances, we find no abuse of discretion in the trial court's denial of a recovery for attorneys' fees for the services performed by plaintiffs' attorneys.

Plaintiffs answer this point by stating that the trial court did not exercise its discretion as it refused to hear any

evidence on the subject. The evidence offered by plaintiffs related only to the nature and reasonable value of the legal services performed by plaintiffs' attorneys. The refusal of the trial court to hear such evidence does not indicate that it did not exercise its discretion. All of the other facts above mentioned were before the trial court and said facts fully warranted the denial of an allowance for attorneys' fees, regardless of the nature and reasonable value of said legal services.

From what has been said, we conclude that there was no error in any of the portions of the judgment from which any of these appeals were taken.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

Petitions by plaintiffs, defendants and interveners to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, were denied by the Supreme Court on May 6, 1940.