[Civ. No. 42870. Second Dist., Div. Five. Feb. 11, 1975.]

GUADALUPE MARIA MELENDRES, as Special Administratrix, etc.,
Plaintiff and Respondent, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

LOS ANGELES FIRE & POLICE PROTECTIVE LEAGUE,
Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

La Follette, Johnson, Horgan & Robinson, John T. LaFollette, William D. Moore, Bodle, Fogel, Julber, Reinhardt & Rothschild and Lester G. Ostrov for Plaintiff and Appellant.

Mohi, Morales & Glasman and Frank Morales for Plaintiff and Respondent.

No appearance for Defendants and Respondents.

OPINION

HASTINGS, J.—

STATEMENT OF FACTS

Adolph B. Melendres (Melendres),[1] respondent, was a police investigator employed by the Police Department of the City of Los Angeles. The Los Angeles Fire & Police Protective League (League), appellant, in 1971 had a membership of approximately 9,000 regular firemen and sworn policemen who were employed by the City of Los Angeles.[2] The total employment by the city of regular firemen and sworn policemen in that year was approximately 10,000.

In June of 1971, as a result of certain action taken by the Los Angeles City Council, the firemen and policemen of the City of Los Angeles were denied a 7.837 percent salary increase to which they would have been entitled if the council had implemented a salary formula contained in the Los Angeles Administrative Code. Melendres, on July 6, 1971, filed a class action on behalf of all the firemen and policemen employed by the

---

[1]Melendres died on August 24, 1973. The judgment in favor of the plaintiffs in the two class actions was filed on September 21, 1972, with the court reserving jurisdiction to determine attorneys fees at a later date. The order awarding attorneys fees was signed on January 31, 1973.

[2]"Member of the Fire Department" means any person duly and regularly appointed under civil service rules and regulations to perform the duties of a regular fireman.

"Member of the Police Department" means any person appointed under civil service rules and regulations and sworn in, as provided by law, to perform the duties of a regular police officer.

City of Los Angeles in the superior court (No. C 6702), seeking a determination that said employees were entitled to a retroactive pay increase. Subsequent thereto, on July 19, 1971, the League filed its action on behalf of all the employed firemen and policemen and its members in the same court (No. C 7663), seeking similar relief. The two cases were consolidated and judgment was entered in favor of the entire class of policemen and firemen. An appeal filed in that case, No. 2d Civil 41931, was decided and filed by Division Four of this court on July 18, 1974.[3] That decision, however, does not affect this appeal.

Melendres and the League had separate attorneys. The League had a written fee agreement with its attorneys. In substance, it provided that counsel would be paid $50 an hour for their services plus costs. Further, the attorneys were permitted by the agreement to petition the court for salvage fees from any common fund that had been created and reserved for benefits that might be conferred, such fee to be limited to 5 percent of the fund. From such attorney's fees that might be awarded, the League was to be reimbursed for legal fees and costs advanced. Melendres had no contract for fees with his attorneys; except it was agreed that, if they were successful, they would accept fees awarded by the court from the common fund.

The trial court held that the Melendres action and the League's action were proper class action suits. That, by reason of the consolidation, they were treated as one suit and that the attorneys for Melendres and the attorneys for the League were in fact representing all of the firemen and policemen in the class. Attorney's fees were requested by counsel of both parties, which fees were granted. The court made findings in connection therewith as follows: "The Court having considered the declarations on file and other documents in support of and in opposition to said Order, having heard the arguments of counsel and being fully advised in the premises, finds and orders as follows:

"1. A common fund of retroactive salary and wage increases having been created and a substantial benefit having been conferred upon the class or classes of regular firemen and sworn policemen whether active or retired, by the skill and endeavors of legal counsel representing said class or classes, the Court exercising its' [sic] equitable powers to award to counsel, who have conferred benefits upon said class or classes which but for their efforts would probably have been lost and this being a proper

---

[3]The appellate court modified portions of the judgment but affirmed the judgment ordering the retroactive salary increases.

case for surcharging a common fund with the expenses of its recovery, Respondents are hereby ordered to deduct and pay over to the law firm of Kurlander, Solomon & Hart and Lemaire & Faunce seven point five (7.5) percent of all gross funds paid to regular firemen and sworn policemen under the judgment herein.

"2. To the law firm of Mohi, Morales, Dumas & Glasman two point five (2.5) percent of all gross funds paid to regular firemen and sworn policemen under the judgment herein."

It is from the award of attorneys fees that the League has appealed.

### ISSUES

(1) In a "class action" seeking the recovery of a "common fund," must a vast majority of the class who have retained attorneys of their own choice, pursuant to an express contract, be surcharged for attorneys' fees incurred by a slim minority of the class?

(2) May the trial court ignore an express contract under which the parties (attorney/client) have agreed upon the compensation for services rendered to the client?

### DISCUSSION

It is now generally accepted that the attorney whose client is the plaintiff in a class action suit is entitled to attorneys' fees from all members of the class benefited if a fund is obtained or protected and brought into court. (38 A.L.R.3d 1384, 1390.)

California is in accord. In *Bank of America* v. *West End etc. Co.,* 37 Cal.App.2d 685, 696 [100 P.2d 318], the court recognizes the rule that in equity where the parties prosecuting the action recover, protect, preserve or increase a fund for the benefit of themselves and others, attorneys' fees are permitted out of such fund. See also *Estate of Reade,* 31 Cal.2d 669, 671-672 [191 P.2d 745]; *Winslow* v. *Harold G. Ferguson Corp.,* 25 Cal.2d 274, 277 [153 P.2d 714].

"The bases of the equitable rule which permit surcharging a common fund with the expenses of its protection or recovery, including counsel fees, appear to be these: fairness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by

the expenses; correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery; encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be promptly and directly compensated should his efforts be successful." (*Estate of Stauffer*, 53 Cal.2d 124, 132 [346 P.2d 748].) In *Sanders* v. *City of Los Angeles*, 3 Cal.3d 252 [90 Cal.Rptr. 169, 475 P.2d 201], the trial court allowed attorneys fees after awarding retroactive wage increases. The Supreme Court allowed the award to stand, and stated that any objection to the fees could only be made by the members of the class affected. Such right to object, however, does not mean the court is without jurisdiction to award the fees, but affirms class members' right to appeal if they feel the judge has abused his discretion. The appeal in this case is a good illustration of the *right* to appeal by members of the class even though we affirm the award.

The history of the term "salvage fees" is noteworthy. In *Legal Therapeutics: The "Salvage" Factor in Counsel Fee Awards*, 69 Harvard Law Review 658, the author, George D. Hornstein, notes at pages 663-664: "The motivation for such awards makes inevitable the analogy of salvage at sea:

" 'In [maritime] salvage cases courts have wisely come to think that, as a matter of public policy, it is necessary to give such adequate reward to a successful salvor as will make others to whom salvage situations are presented interested in attempting salvage operations. There must always be a flavor of generosity in the awards to success in order that an appetite for efforts may be stimulated.

" 'This attitude involves a wise public policy and is as beneficial to shipowners, cargo owners, and underwriters in admiralty law as a similar attitude is to creditors in bankruptcy proceedings.' . . . [*In re Osofsky*, 50 F.2d 925, 927.]

"The maritime salvage analogy is not confined to policy motivation. Parallels are also found in the principle employed when the value of the salvor's services is assessed. In salvage at sea and in class actions alike, any reward is entirely contingent on success. In both, the value of the property salvaged is the primary element determining the salvor's fee. In maritime salvage this principle has been applied over a long period consciously and consistently, with percentage allocations for each subsidiary factor bearing upon the service. . . .

"Emphasis upon the element of 'salvage' as the major element in a counsel fee award is sometimes frankly stated by the court. [Fn. omitted.] More often it is implicit in application of a percentage formula to the result achieved—the percentage usually being the equivalent of a familiar fraction (*e.g.*, $\frac{1}{2}$, $\frac{1}{3}$, $\frac{3}{10}$, $\frac{1}{4}$, $\frac{1}{5}$, $\frac{1}{8}$, $\frac{1}{10}$). Different percentages are explainable by reason of the conservatism of the judge, the nature of the suit, and the technical difficulties involved. Also, as might be expected, the amount of the benefit affects the percentage employed; if the benefit is very large, a lower percentage or even percentages graduated downward are used. [Fn. omitted.] In a single litigation different percentages have been used for separable parts of the recovery, reflecting different types of legal skill or degrees of success. [Fn. omitted.]"

While the history of "salvage fees" illustrates attorney's fees are properly paid from the fund recovered, this case is novel in several respects. The first to file the class action suit was Melendres for himself and all other members of the class. The League, through its own attorneys, subsequently filed its action whereby it represented not only its own members but claimed to represent the rest of the class already represented in the Melendres action.[4] The League then filed its motion to declare the within-action and individual action or to abate in the superior court. The motion sought to prevent Melendres from representing the firemen and policemen employed by the City of Los Angeles. Attached to the motion was the declaration of Stephen W. Solomon, one of the attorneys representing the League. In substance, he stated that on behalf of the League he had prepared pleadings for the class action suit on June 30 and July 1, 1971, and they were ready for filing on the latter date; that on said date the board of directors of the League decided further administrative steps should be taken prior to filing the legal action, therefore the filing was delayed; that on July 16, 1971, he learned

[4]Decisional law is practically non-existent in California and other jurisdictions on the right of a member or members of a class to retain counsel of their own choosing after the original class action suit has been filed. Of general note is a provision in the Los Angeles Superior Court Manual for Conduct of Pretrial Proceedings on Class Action Issues, section 427.7, subdivision (f) which states: "A motion by any class member that he be made a co-representative may be made; he also may move that as co-representative he be allowed to associate additional counsel to represent the class." This suggests that the attorneys for the plaintiff in the first class action suit filed, will represent the class unless the court orders otherwise upon proper motion. The case at bench was filed and commenced prior to the adoption of the manual; however, we do not believe this case stands or falls on the order of filing of the two actions. We do not hold by these comments that a "class member" may not disassociate from a class action and file a separate similar action.

of the Melendres action which necessitated the filing of the League's action. At the hearing on the motion in the superior court before Judge Robert A. Wenke, the court voiced its thoughts and concern over possible conflicting class action suits on the same subject matter. It did note that Melendres and the League were proceeding on different theories. The court did not grant the League's motion to prevent Melendres from representing the entire class, but instead consolidated the two actions for trial.

## ARGUMENT

The gist of League's complaint is that a "vast majority of the class" (approximately nine-tenths) of firemen and policemen retained their own counsel pursuant to a contract that the attorneys' fees would not exceed 5 percent of any recovery, therefore members of the League should not have to share in payment of an additional 2½ percent of the recovery to Melendres' counsel, and the court had no right to vary the fee arrangement.[5]

In support of this argument, the League cites *Estate of Bullock*, 133 Cal.App.2d 542 [284 P.2d 960]. The executor had petitioned the court for authority to expend funds of the estate. The beneficiaries, represented by various attorneys, successfully opposed the petition. One of the beneficiaries' attorneys requested fees from the estate assets. The court denied fees, refusing to apply the equitable doctrine outlined in our Discussion *supra*.

*Bullock* is inapplicable here. Although claimant performed some legal services of value to the estate, there was a finding that his position was detrimental to the residuary beneficiaries and the primary purpose of his services benefited the income beneficiaries. Further, the other beneficiaries had their own attorneys who did not seek fees from the estate. There was no group not represented by counsel that benefited by petitioner's services that in equity should bear their share of the litigation.

In the case at bench Melendres, in his complaint, purported to represent all of the firemen and policemen. The subsequent complaint of League stated in one paragraph it represented all the firemen and

[5]The net result of League's argument, as we interpret it, is that League's attorneys should receive 5 percent of the recovery received by its members (approximately 9,000), and Melendres' attorneys should receive a percentage fee (as determined by the court) on the recovery received by the non-union members (approximately 1,000).

policemen and in another paragraph it stated it represented all of its members (a group less than the entire class). Judge Bernard S. Jefferson who tried the consolidated actions, in considering this somewhat confusing problem, said: "But, if you will recall, what the Court ruled during the trial was that the members of the League are not simply being represented by the two firms together, Kurlander, Solomon and Hart, and Lemaire and Faunce, *but that I considered this a joint endeavor beginning with the Melendres lawsuit.* So that Mr. Morales was representing the members of the Fire and Police Protective League, as well as the two law firms just mentioned. . . .

"So I am going to do something—I guess it is unusual—I am going to fix the fee to be assessed against the entire class, regardless of what membership they make up of 10 percent of the total amount. And that 10 percent, of course, will apply to each person, who, if the judgment is sustained, will receive anything from it.

"Then out of the 10 percent, I am going to award 75 percent of the 10 percent, whatever that amount works out to, to Kurlander, Solomon and Hart, and Lemaire and Faunce; and 25 percent of that 10 percent to the firm of Mohi, Morales, Dumas and Glasman.

"And then it will be up to Kurlander, Solomon and Hart, and Lemaire and Faunce, to remit whatever they want to back to members of the League. But I simply cannot see requiring the non-members to pay any more attorneys' fees than the members.

"Now, 10 percent is much less than 20 or a third, but I am being guided somewhat by the fact that there has been this five percent contract. If there hadn't been the five percent, I would be inclined to fix the overall fee higher, but in view of the five percent, I am not honoring that. . . .

"As far as the court is concerned, the contract does not govern, because I have held that both the two firms were representing one class, which would be approximately 10,000 policemen and firemen; and, that being true, that the contract which the League had with its own attorneys simply does not govern as far as I am concerned, because the class is being represented by Mr. Morales as well as by the league's attorneys. . . ." (Italics added.)

Although the League's attorneys have agreed to abide by the contract and take just 5 percent of the fund received by the League's members,

and 7½ percent of the funds received by the non-members, the court order is objectionable to the League and its attorneys on two grounds:

(1) The attorneys for Melendres by receiving 2½ percent of the *entire fund* are also sharing in the monies received by the League's members, and (2) the court should not be permitted to award *greater fees* to the League's attorneys than the contract calls for as a matter of law. The League's attorneys join in this contention, even though they are waiving the extra 2½ percent awarded, because of the possible adverse tax consequences that such an order might produce.

## THE AWARD OF ATTORNEYS FEES FROM THE ENTIRE FUND

The broad discretion of the trial court in awarding fees in this type of action is well established. Professor Hornstein in his article *Legal Therapeutics: The "Salvage" Factor in Counsel Fee Awards,* 69 Harvard Law Review, 658, *supra,* states at page 681: "In class litigation the amount of the counsel fee award is almost entirely in the discretion of the trial judge since it is subject only to the limitation—very flexible . . . that it must be fair and reasonable." That this power conferred on the trial court is part of the equitable nature of the action itself, was recognized by Justice Frankfurter in *Sprague* v. *Ticonic Bank,* 307 U.S. 161 [83 L.Ed. 1184, 59 S.Ct. 777]. After a statement lumping counsel fees and other litigation expenses under the term "taxable costs," he states at pages 164-166 [83 L.Ed. at page 1186]:

"Allowance of such costs in appropriate situations is part of the historic equity jurisdiction of the federal courts. The suits 'in equity' of which these courts were given 'cognizance' ever since the First Judiciary Act, constituted that body of remedies, procedures and practices which theretofore had been evolved in the English Court of Chancery, [fn. omitted] subject, of course, to modifications by Congress, e.g., *Michaelson* v. *United States,* 266 U.S. 42. The sources bearing an eighteenth-century English practice—reports and manuals—uniformly support the power not only to give a fixed allowance for the various steps in a suit, what are known as costs 'between party and party,' but also as much of the entire expenses of the litigation of one of the parties as fair justice to the other party will permit, technically known as costs 'as between solicitor and client.' [Fn. omitted.] To be sure, the usual case is one where through the complainant's efforts a fund is recovered in which others share."

Where there is more than one plaintiff, and each is represented by his own attorney, it is not unusual to award a percentage of the fund involved as a total fee with the court apportioning the fee as it deems reasonable between participating attorneys. In *Murphy* v. *North American Light & Power Co.,* 33 F.Supp. 567, there was a consolidation of two derivative suits by different preferred stock holders, with each group being represented by its own attorney. In commenting on the theory for awarding the stock holders attorneys fees, the court stated at pages 570-571: "In all derivative causes like these, it must be remembered that there is not any contractual relationship whatever as to legal services except between the complainant who commences the litigation and his attorneys.

"As to any other stockholders, whether common or preferred, the attorneys for the named plaintiffs are pure volunteers and any allowances for fees to which they may be entitled must be estimated principally in the light of the benefit conferred on the corporation and so, by hypothesis, on the other stockholders of all classes, by the activities of counsel on behalf of the stockholders who brought the derivative suit . . .

"In approaching the determination of fees properly to be allowed in these causes, one must, as a practical matter, lump the services of attorneys for both complainants together and then see how the total appropriate fee thus fixed for those services should be allocated between them. Cf. *In re Osofsky,* [*supra*], D.C., 50 F.2d 925, 926. . . .

"Where two lawyers have—even by the very antagonistic co-operation here evident—together contributed to a successful issue of such causes as these, the benefit conferred on the corporation whose stockholders they represent, is what mainly counts, and, looked at in the light of the effort required and the other elements set forth in *In re Osofsky,* [*supra*], D.C., 50 F.2d 925, 927, sets the basis of the total fee to be allowed.

"After the total fee is fixed, the question must then be decided as to what proportion thereof shall be allocated to the attorneys for each set of plaintiffs, just as in the case of a plurality of salvors the total salvage award is divided and allocated as between them. Cf. Robinson on Admiralty, pp. 745, 746."

The real issue here is whether the trial court abused its discretion by the manner in which it awarded attorneys fees. We are not unmindful of

the League's concern that attorneys for one (or a few) of the members of the class, realizing that a class action suit might be commenced by a majority of the class (particularly where members are represented by an Association or Union), might file first in order to capture the class, or a portion thereof, thus being in a position to share in a possible award of fees. This concern is reflected in the League's motion to have Melendres' action declared as his alone.[6] However, this motion was denied and Melendres' right to remain as plaintiff on behalf of himself and the class was granted by Judge Wenke. Judge Jefferson further sustained this ruling by stating he considered it a joint effort. In opening trial briefs the attorneys for the two plaintiffs disclosed varying theories for recovery.[7] They actively participated in the trial. The record before us does not indicate that the attorneys for Melendres or the League objected to the others' participation once the cases were consolidated. However, if they did, the trial judge obviously considered it lacked merit and the record does not disclose an abuse of discretion on this issue. By the court's comments (*supra*), it did not award fees by the number of persons in each group (League and non-League). The award was based upon the total amount salvaged but the services of each firm provided the percentage of the *total attorneys fees* to be awarded. (*In re Osofsky, supra.*) We do not find in the record any arguments by the League that they were in fact representing only its members (which might have strengthened their position). Instead, it would appear the League was satisfied with the court's evaluation that it was a joint effort but wanted the court to apportion fees only under its theory. Obviously, this would place a greater burden for costs and fees on the non-members of the League, by increasing the benefits to be paid the League's members.

■ The nature and circumstances of each case should determine the amount of fees to be awarded by the court, and should also guide it in determining which participating attorneys should be entitled to share in it and the manner of its distribution. Parenthetically, in the complex field of the class action suit, in the great majority of cases it is *only* the trial court, fully apprised of all the facts, that can render the proper decision on the amount and apportionment of attorneys fees. The court here did not limit its consideration only to the value of services rendered to the trial itself. Obviously the conception, initiation of the action, and pretrial preparation important to plaintiffs' success by both League and non-League attorneys had a value.

[6] Civil Code section 1782 and the Los Angeles Superior Court Manual for Conduct of Pretrial Proceedings on Class Action Issues suggest other procedures for determining problems of this nature in advance of trial.

[7] Further comment on this point is discussed *infra*.

■ The key to this case is the determination of the trial court that the plaintiffs were engaged in a joint endeavor and each plaintiff benefited all members of the class. This was consistent with the pleadings in both actions. The parties do not take issue with this ruling of the trial court on this appeal, and correctly so, as there was no error. It thus follows that attorneys fees must be apportioned from the entire fund as any other procedure would be inconsistent with the trial court's reasoning.

■ The amount and apportionment of the award will only be reversed on appeal where the trial court has erred as a matter of law, or a clear abuse of discretion is shown. Except as noted below, there was no error. We do not mean to infer that the League's theory under different circumstances would be inappropriate. The facts and circumstances surrounding a somewhat different case could justify, under broad equitable rules, an apportionment of the fees as suggested; or other equitable divisions are also conceivable. However, based on the facts of this case, the determination of the trial court was not improper.

After oral argument to this court, this appeal was taken under submission. The League then filed a motion to vacate the order of submission and to augment the record on appeal.[8] The motion directed itself to two contentions: (1) The death of Melendres ended his representation of the class, and since his counsel have not petitioned the court to substitute an additional representative of the class, the League is the only adequate representative of the class. (2) That the appeal decided by Division Four of this court on July 18, 1974,[9] modified the trial court's judgment and determined that the substantive laws as pleaded by the League prevailed, and that the Melendres action had in fact conferred no benefit on the class he purported to represent and therefore his attorneys are not entitled to the fees awarded by the trial court.

Melendres had died at the time the League filed its first brief on this appeal, yet it was after oral argument and submission of the case that we were informed of this fact. This problem has been resolved, however, as Mrs. Guadalupe Maria Melendres, special administratrix of Melendres' estate, has been substituted in as his personal representative. (Rule 48, Cal. Rules of Court; *Wilson v. Wilson,* 96 Cal.App.2d 589, 597 [216 P.2d

[8]This court granted the motion to augment the record, but denied the request to set aside the submission of the appeal. This motion was filed by Bodle, Fogel, Julber, Reinhardt & Rothschild, substituted as attorneys for the League replacing LaFollette, Johnson. Horgan & Robinson.

[9]The California Supreme Court denied the petition for hearing by the City of Los Angeles.

104].) Also, one Donald C. Wesley, an employee of the Los Angeles Police Department and a member of the class during the period covered by this lawsuit, has been added as a representative party and will act with Melendres' personal representative in all remaining proceedings necessary to complete the judgment.

■ The second contention, being raised at this late hour in the appeal, is untenable. It could have been (and was not) raised at trial or in the appellate briefs. One reason for this rule is demonstrated here. As we mentioned earlier, where several parties of the class are represented by counsel, a heavy burden is placed on the trial court to determine which counsel should represent the class; and when more than one attorney participates, how the fees should be apportioned. Only the trial court knows the many factors involved that lead to its determination. In the case at bench, where the issue was not raised to the trial court, we cannot determine what weight the trial court may have given this fact. In the absence of any such showing we cannot say there was an abuse of discretion.

### THE AWARD OF ATTORNEYS FEES
### IN EXCESS OF THE FEE CONTRACT

This issue is clearly a *rara avis*. At first sight, the problem seems to disappear with the League attorneys' agreement to abide by the contract and not accept the additional fee award; but this is not the case. The reason, as argued by the attorneys for the League, is that a waiver or remittance of the extra fees might cause them serious tax consequences. We cannot speculate on the effect of the tax laws and regulations on the judgment as rendered, but we are sufficiently knowledgeable with tax law to recognize that a problem exists.

No case law on the right of a trial court to grant fees in excess of the amount agreed upon by the parties has been cited to us, and our research has also been nonproductive.[10]

We have read the entire reporter's transcript that reflects the argu-

---

[10] Counsel for the League cited *Webster County Soil Conservation Dist.* v. *Shelton* (Ky.) 437 S.W.2d 934, as authority for its position. In that case the court had awarded the attorneys in a class action suit less than that provided for in a contract with certain members of the class. On appeal the trial court was reversed on the theory it had no right or authority to impair the obligations under the contract. While we reach the same conclusion here, we feel the issues in the two cases are not similar and our opinion in the case at bench is not to be construed as agreeing or disagreeing with the Kentucky case.

ments and comments of counsel and the trial court concerning the allowance of attorney fees. The record is clear that the trial court conscientiously sought an equitable solution for all the plaintiffs' attorneys. The problem was compounded by the fact that the League filed the action on behalf of its members and non-members, so that technically it represented the entire class. It then argued the fee issue on the theory that only the members of the League should pay their fee from monies they recovered. As stated earlier the court rejected this concept, holding the League as well as Melendres' attorneys represented the entire class.

The trial court noted it was not a party to the contract, thus not bound by it, but stated "[a]nd then it will be up to [the attorneys] to remit whatever they want to back to members of the League." The record of the trial court proceedings does not disclose any reference by counsel to the possible adverse tax consequences caused by the proposed judgment. Thus we do not believe the trial court had the opportunity to consider this issue. Accordingly, this newly introduced concept has changed a judgment that appeared beneficial to all (and easily adjusted by waiver or remittance of the additional fee) into a possible inequitable solution for the successful League attorneys.

■ Although the trial court has broad equitable powers in granting attorneys' fees in class action suits as discussed *supra,* other recognized rules of law that place a restraint on this power should be followed when appropriate. We believe that such law exists on this issue and required the trial court to honor the contract between the League and its attorneys. We state it as follows: "An attorney representing a class, just as an attorney representing any client, is entitled to recover from those with whom he is found to have contracted, in accordance with the particular contract's terms, so long as the contract is generally valid, is permissible under the applicable enactments or rules of ethics, and is not contrary to public policy." (38 A.L.R.3d 1384, 1389-1390.) In harmony with this rule is Code of Civil Procedure section 1021 that states: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys .... is left to the agreement, express or implied, of the parties ...." In *Linn* v. *Weinraub,* 85 Cal.App.2d 109 [193 P.2d 21], a lease provided for attorneys' fees earned up to the time of judgment. The attorneys sought fees for services rendered after entry of judgment. The court, in relying on section 1021, said at page 111: "As there is no statutory support for an award of attorneys' fees in this case, the quoted provisions of the lease *govern the court* in the matter." (Italics

added). Undoubtedly the general rule as stated in 38 A.L.R.3d 1384 and the law as set forth in section 1021 did not contemplate the problem of the case at bench. But the theory and reasoning expressed by both can logically be extended to apply to the issue here. The code section is clear—absent statutory authority for attorneys' fees, the amount and method of payment is left to the agreement of the parties. Such contracts are valid where permissible under the applicable enactments or rules of ethics and not contrary to public policy. (No such problem exists here.) While attorneys' fees in the present case are allowable without an agreement as stated under "Discussion," *supra,* at the same time there is no provisionary statute as referred to in section 1021; absent any legal factors voiding such agreement, or overriding equitable reasons that would have the same effect,[11] when the parties *do* contract for fees it should govern the court's decision. Or, to express it somewhat differently, the attorney's services (though worth more) are expressly limited to the amount which he prays for. Here that prayer is expressed in the contract and counsel's expressed desire to abide by it. The record here does not show any legal factors or overriding equitable reasons for not awarding fees based on the contract. To the contrary, the judgment could possibly create a liability not contemplated by the parties or desired by the prevailing attorneys who remained consistent with their position and urged the trial court to award them fees based on the contract. We agree with the League's trial attorneys[12] that, based on the facts of this case, the court was required to honor the contract and the judgment should have awarded them a 5 percent fee from the total fund received by the League's members, and 7½ percent from the total fund received by the non-members.

The judgment of the trial court is modified as follows:

1. A common fund of retroactive salary and wage increases having been created and a substantial benefit having been conferred upon the class or classes of regular firemen and sworn policemen whether active or retired, by the skill and endeavors of legal counsel representing said class

---

[11]We realize that there is the possibility that counsel could initially capture a class member or small group of the class members, and contract for a nominal or smaller than normal fee, with the hope of obtaining a sizeable fee by court order from the remaining members. This could be an inequitable situation justifying the courts ignoring the contract and allow apportionment equally or on some other equitable basis. We do not have such a situation here. The League represented nine-tenths of the membership, and as stated, the record discloses no inequitable scheme.

[12]LaFollette, Johnson, Horgan & Robinson, and Bodle, Fogel, Julber, Reinhardt & Rothschild are the League's attorneys on this appeal. The trial attorneys were Kurlander, Solomon & Hart, and Lemaire & Faunce.

or classes, the court exercising its equitable powers to award to counsel, who have conferred benefits upon said class or classes which but for their efforts would probably have been lost and this being a proper case for surcharging a common fund with the expenses of its recovery, respondents are hereby ordered to deduct and pay over to the law firm of Kurlander, Solomon & Hart and Lemaire & Faunce Seven point five (7.5) percent of all gross funds paid to regular firemen and sworn policemen under the judgment herein *who were not members of the League and to deduct and pay over to such law firms Five (5.0) percent of all gross funds paid to regular firemen and sworn policemen under the judgment herein paid for periods when they were members of the Los Angeles Fire and Police Protective League in accordance with the contract for attorneys fees between the League and said law firms.*

Except as modified, the judgment is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.