[Civ. No. 58909. Second Dist., Div. One. June 25, 1981.]

LONG BEACH CITY EMPLOYEES ASSOCIATION, INC.,
Plaintiff and Respondent, v.
CITY OF LONG BEACH et al., Defendants and Respondents;
CHARLES MURPHY, Intervener and Appellant.

[Civ. No. 59325. Second Dist., Div. One. June 25, 1981.]

LOS ANGELES COUNTY EMPLOYEES ASSOCIATION,
LOCAL 660, SERVICE EMPLOYEES INTERNATIONAL
UNION, AFL-CIO et al., Plaintiffs and Respondents, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents;
JO ANNA ORNELAS, Intervener and Appellant.

COUNSEL

Maurice A. Benson for Interveners and Appellants.

Geffner & Satzman, Leo Geffner, Lemaire, Faunce & Katznelson and Edward L. Faunce for Plaintiffs and Respondents.

Robert W. Parkin, City Attorney, and John R. Calhoun, Assistant City Attorney, for Defendants and Respondents.

OPINION

SPENCER, P. J.—

### INTRODUCTION

Interveners Charles Murphy and Jo Anna Ornelas, nonunion members of union-represented bargaining units, appeal from a trial court order awarding union-retained attorneys 3 percent of salary increase monies obtained as a result of litigation instituted by the unions (respondents Long Beach City Employees Association, Inc. and Los Angeles County Employees Association).

STATEMENT OF FACTS[1]

The City of Long Beach (City) and the Long Beach City Employees Association (Union) adopted several memoranda of understanding in July 1977. The memoranda provided for two salary increases for all members of the Union-represented bargaining unit, with the increases to become effective July 1 of 1978 and 1979. These memoranda were approved by the Long Beach City Council.

After Proposition 13 was passed in June 1978, the state Legislature enacted a bill (Sen. Bill No. 154) providing supplementary funding for local governments hard-pressed by Proposition 13's effects. The bill added section 16280 to the California Government Code, and granted the funding to the local governments so long as local governmental employees received no greater salary increases each year than did state governmental workers. State workers subsequently received no increases.

The terms of the City-Union memoranda thus were in conflict with the dictates of Senate Bill No. 154, and on June 30, 1978, the city council adopted an amendment to the memoranda. The amendment provided an alternate salary schedule with no salary increases to be effective immediately. Workers were paid according to the alternate schedule, but a special provision provided that if Senate Bill No. 154 was ultimately ruled unconstitutional or inapplicable to the City-Union contract, the terms of the original memoranda providing raises would be deemed to have been in effect starting July 1, 1978. The salary increase monies for both union and nonunion members of the bargaining unit[2] were from that point paid into a special interest-bearing trust account to be used in the event of such a ruling.

The Union contracted with two law firms, Geffner & Satzman and Lemaire, Faunce & Katznelson (Law Firms), to pursue litigation to declare Senate Bill No. 154 unconstitutional or inapplicable to its

---

[1]The Long Beach case and the Los Angeles case were consolidated at the trial level. The same attorneys represented both unions. The trial court's findings of fact and conclusions of law are substantially identical in the two cases. For ease of reference, the fact situation described pertains to the Long Beach case.

[2]In the Long Beach case, there are approximately 1,759 union members and 1,631 nonunion members of the bargaining unit.

In the Los Angeles case, there are approximately 50,400 union members and 25,000 nonunion members of the bargaining unit.

memoranda of understanding. The Union agreed to pay a contingency fee of 5 percent of all monies owing to members of the bargaining unit if the litigation was successful and the monies were recovered. (When a trial became unnecessary for the resolution of the litigation, the contingency fee was reduced to 3 percent.)

The Union petitioned for a writ of mandate to challenge Senate Bill No. 154 and the matter was set for hearing. Before the hearing was finally held, the City judged that the issues presented were rendered moot by the decision of the California Supreme Court in *Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296 [152 Cal.Rptr. 903, 591 P.2d 1], which held Senate Bill No. 154 to be unconstitutional. The City was party respondent in a case consolidated with *Sonoma*. The City contacted the Union and a settlement was arranged.

On February 28, 1979, the Union obtained an ex parte order from the trial court to withhold and sequester 3 percent of the pay raise monies in the trust account owed to both union and nonunion members of the bargaining unit. On March 19, the City distributed the money (minus the sequestered 3 percent) to the City employees.

On April 4, 1979, the Law Firms requested the court to pay them the sequestered monies as attorneys fees for the litigation now settled in light of *Sonoma*.

On April 18, the trial court granted an ex parte motion by Charles Murphy (Murphy), a nonunion member of the bargaining unit represented by the Union, to intervene individually and for all others similarly situated. Murphy complained that the Union-Law Firm contract did not bind the nonunion members of the bargaining unit. He also complained that the amount of fees was unreasonable. Murphy attempted discovery regarding what efforts had actually been undertaken by the Law Firms in the course of the litigation. The Law Firms refused to provide substantive answers to most of the interrogatories on the basis that such facts were irrelevant to the enforcement of the Union-Law Firm contract.

On November 26, 1979, the trial court issued findings of facts and conclusions of law granting the award of fees. The court ordered the City to pay the Law Firms the sequestered 3 percent minus the City's costs in withholding the money.

## DISCUSSION

Interveners first contend that nonunion members of the union-represented bargaining unit, benefited by union-initiated litigation, are not bound by the terms of a contract for fees negotiated by the union with its attorneys. We agree.

The trial court granted the law firms fees amounting to a pro rata 3 percent of a fund consisting of monies recovered and owing to both union members and nonunion members of the bargaining unit. Due to the phrasing of the order, interveners must challenge the entire award. However, interveners have no interest in challenging the award *insofar as it applies to union members.*

Without question, the trial court's award is entirely proper with respect to union members. The union was free to contract for its members or in its own right to enforce the memoranda of understanding. (*Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328 [124 Cal.Rptr. 513, 540 P.2d 609].) That contract should not be disturbed by the trial court in the exercise of its equitable jurisdiction unless challenged by the parties. (*Melendres v. City of Los Angeles* (1975) 45 Cal.App.3d 267 [119 Cal.Rptr. 713].) Accordingly, we affirm the trial court's order with respect to monies recovered for union members.

With respect to the nonunion members of the bargaining unit, we believe that a different approach is necessary; we shall discuss the equitable basis for the trial court's order later in this opinion.

Among his conclusions of law, the trial court judge stated: "11. The petitioning locals *had the right to contract* with the attorneys to pay attorneys fees on a contingency basis out of the recovery of a common fund on a pro rata basis *against each member of the bargaining unit who received a share of the recovery.*" (Italics added.) The minute order awarding the funds read: "Motion for attorneys fees granted as prayed (*per contract*) ...." (Italics added.) Thus it is evident that the fees were imposed, on a pro rata basis, on the nonunion members' share of the recovery, pursuant to a contractual theory.

The issue herein presented, that of the rights and duties of nonunion members vis-à-vis the unions which represent other members of the bar-

gaining units to which the nonunion members also belong, has long been the subject of debate among public employees. While unionization has been fully accepted in the private sector (see Lab. Code, § 923) such acceptance in the public sector is still forthcoming; there are some who retain the view that public employment is best governed by a "merit system" reflected in appropriate civil service regulations.

In 1968, California led the way in the United States by enacting the Meyers Milias Brown Act (MMB), which did provide some recognition of and protection to unions representing local governmental employees. (Stats. 1968, ch. 1390, § 1, p. 2725.) The act remains part of the Government Code today, commencing with section 3500. The act, as presently constituted, still reflects the conflict in philosophy concerning public employment. In Government Code section 3502, it is stated that: "Except as otherwise provided by the Legislature, public employees shall have the right to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations. Public employees also shall have *the right to refuse to join or participate* in the activities of employee organizations and shall have the right to represent themselves individually in their employment relations with the public agency." (Italics added.)[3]

---

[3]Similar provisions were included in the Winton Act, now repealed, which governed local school district employees and the Brown Act, now repealed, which governed state employees. The Winton Act has been replaced by the Public Educational Employment Relations Act (PEERA) (Stats. 1975, ch. 961, § 2, p. 2247), and may be found in the Government Code commencing with section 3540. The Brown Act has been replaced by the State Employer-Employee Relations Act (SEERA) (last amended by Stats. 1979, ch. 98, § 4, operative July 1, 1979), and may be found in the Government Code commencing with section 3526.

Both PEERA and SEERA have, in varying degrees, modified the rights of nonunion members with respect to negotiations with the public employer, although the employees governed by these acts still retain the right to refuse to join the union. There are now provisions for recognition of exclusive bargaining agents (unions); see PEERA, section 3540.1, subdivisions (b) and (2), section 3543; and SEERA, sections 3515, 3520.5, and correlative limitation of individual bargaining. The modifications reflect acceptance of the importance of unionization in the public sector; with it has come the recognition that unions owe a duty of fair representation to the nonunion members of the bargaining units although to date this perceived duty has not yet been expressed in statutory form. (See Bogue, The "Duty of Fair Representation" in California's Public Sector, 44 Cal. Public Employee Reports.)

Similar updating of MMB was considered by the Legislature in 1975 but for reasons which are not clear, Senate Bill No. 275 was not enacted. Thus the MMB remains in a form which fosters uncertainty and ambiguity concerning the rights and duties of unions representing local governmental employees.

Section 3502 has been interpreted as preventing the establishment by a union of an "agency shop," i.e., one requiring all employees of the local governmental bargaining unit to pay union dues irrespective of their union membership (*City of Hayward* v. *United Public Employees* (1976) 54 Cal.App.3d 761 [126 Cal.Rptr. 710]). It is doubtful whether the present language of MMB permits any organizational security devices for the unions recognized in other legislation (see fn. 3). Nothing in MMB addresses the problem which arises when a union which has been designated as a bargaining representative and has the power to negotiate a binding contract with the employer benefiting both union and nonunion members attempts to equalize the burdens of such representation (such as attorneys fees) among both union and nonunion members. It is clearly unjust to allow nonunion employees the benefits of union activity without requiring them to share the burdens as well, under such circumstances as are presented here.

We conclude, however, that there is no present basis, in statutory form, by judicial decision, or pursuant to contractual theory, for holding that the nonunion members involved in the litigation before us were parties to the contract between the unions and the law firms or are bound by the terms of that agreement, and consequently, the trial court erred in assigning a contractual basis for imposing the 3 percent contingency fee on monies recovered for nonunion members.

█ In addition, interveners contend that nonunion personnel are not required under any equitable theory to contribute to attorneys fees for such litigation. The contention is without merit. █ In California, the general rule with respect to attorney fees is codified in section 1021 of the Code of Civil Procedure. Such fees are ordinarily left to "the agreement, express or implied, of the parties, except where specific provision is made by statute."

An exception to this rule, described as an exercise of the "historic power of equity" is the "common fund" exception; i.e., "that one who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs." (*Quinn* v. *State of California* (1975) 15 Cal.3d 162, 167 [124 Cal.Rptr. 1, 539 P.2d 761]; *Serrano* v. *Priest* (1977) 20 Cal.3d 25, 35 [141 Cal.Rptr. 315, 569 P.2d 1303].) The cases are legion which recognize and apply the "common fund" principle (see, e.g., *Fletcher* v. *A. J. Industries, Inc.* (1968) 266 Cal. App.2d 313, 321 [72 Cal.Rptr. 146] and the cases cited) in this state;

the principle has been applied in situations such as the one before us, where a union has secured benefits for both union and nonunion members. (*Sanders* v. *City of Los Angeles* (1970) 3 Cal.3d 252 [90 Cal. Rptr. 169, 475 P.2d 201]; *Melendres* v. *City of Los Angeles* (1975) 45 Cal.App.3d 267 [119 Cal.Rptr. 713]).[4]

In order to grant attorneys fees under the equitable theory of a "common fund" the court must determine first that "the activities of the party awarded fees have resulted in the preservation or recovery of a certain or easily calculable sum of money—out of which sum or 'fund' the fees are to be paid." (*Serrano* v. *Priest, supra*, at p. 35.) ▮ In the instant case the trial court judge referred in his findings to a common fund. He found that the case had been "successfully prosecuted in that it was settled." He evidently judged that although *Sonoma* had mooted the legal issues in the instant litigation, the attorneys had labored to bring about the precise terms of the settlement. Thus he found that a common fund had been created or preserved as a result of the law firms' efforts, and the first requirement for an award of fees from a common fund is satisfied in this case. On equitable grounds we agree with the trial court that nonunion members' share of the recovery should be assessed on a pro rata basis for the attorney fees incurred for services rendered by the law firms in question which has resulted in a benefit to the nonunion members.

▮ Interveners contend that if they are required to contribute to attorneys fees for the litigation, the *amount* required of them should not be governed by the 3 percent contingent agreement of the unions and the law firms, but should be determined by an assessment of the time and effort actually expended by the attorneys. Interveners were denied the right to discovery in this regard; if their contention is correct, they are entitled to remand for the purpose of fact-finding concerning the fees.

▮ It has been held that the value of the services which created or preserved the "common fund" must be assessed so as to provide a basis for adjudicating what constitutes a fair award. (*Quinn* v. *State of California, supra*, 15 Cal.3d 162.) Traditionally, when the trial courts have

---

[4]We do not consider that footnote 25 in *Sonoma County Organization of Public Employees* v. *County of Sonoma, supra*, 23 Cal.3d at page 321, denying attorneys fees in that case dictates that they be denied here as well. The footnote does not indicate which of the several equitable theories for recovery of attorney fees was argued, or what the equities were in that case.

been called upon to award attorneys fees from a "common fund" it has been held that such awards, "reasonable" in nature, are nevertheless within the discretion of the trial courts. (See, e.g., *Bank of America* v. *West End etc. Co.* (1940) 37 Cal.App.2d 685 [100 P.2d 318]; *Adams* v. *California Mut. B. & L. Assn.* (1941) 18 Cal.2d 487 [116 P.2d 75].) Little has been specified as to the quality and kind of information which a trial judge must possess to make the determination. In *Melendres, supra,* it was observed that "[t]he nature and circumstances of each case should determine the amount of fees to be awarded by the court ..." (45 Cal.App.3d at p. 279). In *Serrano, supra,* at 20 Cal.3d at page 49, the California Supreme Court declared that "[t]he 'experienced trial judge is the best judge of the value of professional services *rendered in his court,* and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.'" (Italics added.) ▮ In the instant case it is true that the trial judge was aware of the range of the attorneys activities; he had a variety of different pleadings before him attesting to their efforts; he presumably was aware of their efforts in the *Sonoma* litigation (where the attorneys filed an amicus brief) because he granted several continuances pending the outcome of *Sonoma* and specifically found that the attorneys' efforts had substantially contributed to the settlement made concerning the retroactive pay. His general observations and awareness, however, were not in our view sufficient to enable him to assess the reasonableness of the attorneys fees sought from the nonunion members, in that a major part of the attorneys activities did not occur in his courtroom as they would have had a trial before him actually taken place. We are mindful, too, of the present emphasis placed on a precise determination of attorney time spent, considering the reasonable hourly compensation of each attorney involved, in arriving at a reasonable fee award in such matters as *Mandel* v. *Lackner* (1979) 92 Cal. App.3d 747 [155 Cal.Rptr. 269] and *Serrano* v. *Priest, supra,* although both of these cases involved awards based upon other equitable theories. It seems to us the better rule to require a trial judge, who was *not* afforded the advantage of firsthand observation of a significant portion of the attorney services rendered, to exercise his discretion in the light of a presentation of evidence, whether by affidavit or courtroom testimony, concerning the precise nature and extent of the services rendered.

In summary then, we reject the contention that the nonunion members involved in the case at bench were contractually bound to pay their share of the 3 percent contingent agreement of the unions and the law firms; uphold the trial court's decision to impose the 3 percent contin-

gent fee on that portion of the "common fund" owed to union members; uphold the trial court's decision to impose attorney's fees on nonunion members pursuant to the equitable ground of the "common fund"; and recognize as meritorious the interveners' contention that there was insufficient evidentiary grounds for the trial court's determination of the amount of fees to be paid by nonunion members from their share of the recovery.

The judgment is affirmed in its entirety as to union members; it is also affirmed, insofar as it imposes an obligation on nonunion members to pay a reasonable attorneys fee from their share of the "common fund"; the case is remanded solely for the purpose of taking evidence concerning the services rendered by the law firms involved to nonunion members in creating and preserving the "common fund," followed by a determination of what constitutes a reasonable attorneys fee to be imposed on nonunion members.

Hanson (Thaxton), J., and Dalsimer, J.,* concurred.

The petitions of plaintiffs and respondents for a hearing by the Supreme Court were denied October 22, 1981. Mosk, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.